102 Wn.2d 19 (1984)
685 P.2d 557
THE STATE OF WASHINGTON, Respondent,
v.
Q.D., Appellant. THE STATE OF WASHINGTON, Respondent,
v.
M.S., Appellant.
No. 50198-0.
The Supreme Court of Washington, En Banc.
June 14, 1984.
*20 Raymond H. Thoenig and Julie A. Kesler of Washington Appellate Defender Association, for appellants.
Norm Maleng, Prosecuting Attorney, and Barbara L. Corey-Boulet, Deputy, for respondent.
DIMMICK, J.
Two juveniles appeal from separate adjudications which found that they had committed offenses which if committed by an adult would be crimes. The Court of Appeals, in these consolidated appeals, certified to this court the questions whether the statutory presumption of infant incapacity, RCW 9A.04.050,[1] applies to juvenile *21 adjudications, and if it does, what standard of proof is required to rebut the presumption. Each defendant argues that the trial court's determinations of capacity were erroneous under any standard. Appellant Q.D. additionally argues that there was insufficient evidence to convict him of trespass in the first degree. Appellant M.S. contends that the imposition of a penalty under the crime victims compensation act is either inapplicable or discretionary in juvenile court dispositions.
We hold that (1) RCW 9A.04.050 applies to juvenile adjudications, (2) the standard of proof necessary to rebut the presumption of incapacity is clear and convincing proof, (3) the State proved that M.S. possessed requisite capacity, but we do not reach the issue in Q.D.'s case because (4) there was insufficient evidence of entry to convict Q.D. of trespass, and (5) the imposition of a crime victims compensation act penalty applies to juvenile court dispositions. Accordingly, Q.D.'s conviction is reversed, and M.S.'s conviction and disposition are affirmed.
Appellant Q.D. was found to have capacity per RCW 9A.04.050 in a pretrial hearing. He was 11 1/2 years old at the time of the alleged offense. At trial a different judge determined he had committed trespass in the first degree. The evidence introduced to show capacity consisted of testimony from a caseworker and a detective who had worked with him in connection with his plea of guilty to a burglary committed at age 10 years. The caseworker testified that Q.D. was familiar with the justice system, was street wise, and that he used his age as a shield. The detective told the court that Q.D. was cooperative in the burglary investigation, and he appeared to know his rights. The evidence in the guilt phase consisted of testimony from the principal and a custodial engineer of the school in which Q.D. was charged with trespass. The engineer testified that he saw Q.D. sitting on the school grounds about 2 p.m. playing with some keys that looked like the set belonging to the night custodian. When the engineer checked his desk which was in an unlocked office, he found that the keys were *22 missing as was the burglar alarm key. The engineer could not be certain that he had seen the keys since the morning. He called the principal and they brought Q.D. into the office. When Q.D. arose from the chair he had been sitting on in the office, the burglar alarm key was discovered on a radiator behind the chair.
Appellant M.S., in a single proceeding, was found to have capacity and to have committed indecent liberties on a 4 1/2-year-old child for whom she was babysitting. Evidence included the testimony of the victim, the victim's mother, a physician who had examined the victim, and a social worker who had interviewed the victim. M.S. was less than 3 months from 12 years old at the time of the offense. The issue of capacity was first raised by the defendant in a motion to dismiss at the close of the State's evidence. The State argued that defendant's proximity to the age when capacity is assumed, the defendant's threats to the victim not to tell what had happened, and her secrecy in carrying out the act were ample proof of capacity. The trial judge, in his oral ruling finding capacity, stated that the responsibility entrusted to the defendant by the victim's mother and her own parents in permitting her to babysit showed a recognition of the defendant's maturity.

I

APPLICABILITY OF RCW 9A.04.050 TO JUVENILE COURTS
Counsel for both the State and the defendants urge us to hold that the infant incapacity defense in RCW 9A.04.050 applies to juvenile proceedings. We so hold.
At common law, children below the age of 7 were conclusively presumed to be incapable of committing crime, and children over the age of 14 were presumed capable and treated as adults.[2] Children between these ages were rebuttably presumed incapable of committing crime. Washington *23 codified these presumptions amending the age of conclusive incapacity to 7, and presumed capacity to 12 years of age. As recently as 1975, the Legislature again included the infancy defense in the criminal code. The purpose of the presumption is to protect from the criminal justice system those individuals of tender years who are less capable than adults of appreciating the wrongfulness of their behavior.
The infancy defense fell into disuse during the early part of the century with the advent of reforms intended to substitute treatment and rehabilitation for punishment of juvenile offenders. This parens patriae system, believed not to be a criminal one, had no need of the infancy defense.
[1, 2] The juvenile justice system in recent years has evolved from parens patriae scheme to one more akin to adult criminal proceedings. The United States Supreme Court has been critical of the parens patriae scheme as failing to provide safeguards due an adult criminal defendant, while subjecting the juvenile defendant to similar stigma, and possible loss of liberty. See In re Gault, 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1966); In re Winship, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1977). This court has acknowledged Washington's departure from a strictly parens patriae scheme to a more criminal one, involving both rehabilitation and punishment. In re Smiley, 96 Wn.2d 950, 640 P.2d 7 (1982). Being a criminal defense, RCW 9A.04.050 should be available to juvenile proceedings that are criminal in nature.
The principles of construction of criminal statutes, made necessary by our recognition of the criminal nature of juvenile court proceedings, also compel us to conclude that RCW 9A.04.050 applies to proceedings in juvenile courts.
A finding that RCW 9A.04.050 does not apply to juvenile courts would render that statute meaningless or superfluous contrary to rules of construction. See Avlonitis v. Seattle Dist. Court, 97 Wn.2d 131, 641 P.2d 169, 646 P.2d 128 (1982). Juvenile courts have exclusive jurisdiction over all individuals under the chronological age of 18 who have *24 committed acts designated criminal if committed by an adult. RCW 13.04.011(1), .030(6); RCW 13.40.020(15). Declination of jurisdiction and transfer to adult court is limited to instances where it is in the best interest of the juvenile or the public. State v. Holland, 98 Wn.2d 507, 656 P.2d 1056 (1983). Thus, all juveniles who can avail themselves of the infancy defense will come under the jurisdiction of the juvenile court, and most will remain there. Implied statutory repeals are found not to exist where the two statutes can be reconciled and given effect, U.S. Oil & Ref. Co. v. Department of Ecology, 96 Wn.2d 85, 633 P.2d 1329 (1981). Goals of the Juvenile Justice Act of 1977 include accountability for criminal behavior and punishment commensurate with age and crime. RCW 13.40.010. A goal of the criminal code is to safeguard conduct that is not culpable. RCW 9A.04.020. The infancy defense which excludes from criminal condemnation persons not capable of culpable, criminal acts, is consistent with the overlapping goals of the Juvenile Justice Act of 1977 and the Washington Criminal Code.

II

STANDARD OF PROOF UNDER RCW 9A.04.050
The State has the burden of rebutting the statutory presumption of incapacity of juveniles age 8 and less than 12 years. Capacity must be found to exist separate from the specific mental element of the crime charged. While capacity is similar to the mental element of a specific crime or offense, it is not an element of the offense, but is rather a general determination that the individual understood the act and its wrongfulness. Both defendants liken the incapacity presumption to a jurisdictional presumption. Were capacity an element of the crime, proof beyond a reasonable doubt would be required. In re Winship, supra; State v. Roberts, 88 Wn.2d 337, 562 P.2d 1259 (1977). But capacity, not being an element of the crime, does not require as stringent a standard of proof.
Few jurisdictions have ruled on the appropriate standard *25 of proof necessary to rebut the presumption of incapacity,[3] and fewer still have discussed their reasoning for preferring one standard over another. It appears that other states have split between requiring proof beyond a reasonable doubt, and clear and convincing proof.
Our recent discussion of the standard of proof to be applied in involuntary commitment proceedings offers guidance. In Dunner v. McLaughlin, 100 Wn.2d 832, 676 P.2d 444 (1984), we held that the burden of proof should be by clear, cogent and convincing evidence. Dunner, at 843. In so holding, we recognized that the preponderance of the evidence standard was inadequate, but the proof beyond a reasonable doubt standard imposed a burden which, as a practical matter, was unreasonably difficult, thus undercutting the State's legitimate interests. See also Addington v. Texas, 441 U.S. 418, 60 L.Ed.2d 323, 99 S.Ct. 1804 (1979).
[3] The Legislature, by requiring the State to rebut the presumption of incapacity, has assumed a greater burden than the minimal proof imposed by the preponderance of the evidence standard. On the other hand, to require the State to prove capacity beyond a reasonable doubt when the State must also prove the specific mental element of the charged offense by the same standard, is unnecessarily duplicative. Frequently, the same facts required to prove mens rea will be probative of capacity, yet the overlap is not complete. Capacity to be culpable must exist in order to maintain the specific mental element of the charged *26 offense. Once the generalized determination of capacity is found, the State must prove beyond a reasonable doubt that the juvenile defendant possessed the specific mental element. The clear and convincing standard reflects the State's assumption of a greater burden than does the preponderance of the evidence standard. At the same time, the liberty interest of the juvenile is fully protected by the requirement of proof beyond a reasonable doubt of the specific mental element. We therefore require the State to rebut the presumption of incapacity by clear and convincing evidence.

III

EVIDENCE OF CAPACITY
We do not need to reach the question of whether there was substantial evidence to show that Q.D. understood the act of trespass or understood it to be wrong, as we reverse on other grounds. (See part IV of this opinion.) Nevertheless, a discussion of capacity in this case may prove instructive to trial courts. Q.D. argues that the evidence showed only that he was familiar with the juvenile system through his previous plea of guilty to a burglary charge, but did not show he understood the act and wrongfulness of trespass. The language of RCW 9A.04.050 clearly indicates that a capacity determination must be made in reference to the specific act charged: "understand the act ... and to know that it was wrong." (Italics ours.) If Q.D. is correct that the evidence showed no more than a general understanding of the justice system, he would be correct in concluding that the State did not show an understanding and knowing wrongfulness of trespass. In addition, an understanding of the wrongfulness of burglary does not alone establish capacity in regard to trespass. While both offenses include entry or unlawfully remaining in a building, burglary also requires an intent to commit a crime against a person or property therein. Compare RCW 9A.52.030 with RCW 9A.52.070. Defendant may well understand that it is wrong to enter a locked building with the intention of committing *27 a crime, but not know that entering an unlocked school building is wrong.
The issue of capacity was first raised on M.S.'s motion to dismiss at the end of the trial. The judge stated in response to arguments of counsel that he was persuaded by the confidence in defendant's maturity held by the mother of the victim and her own parents in permitting her to assume the responsibility for babysitting. Contrary to defendant's arguments that the trial judge created a prima facie proof of capacity based solely on babysitting, there was other evidence to support his finding of capacity. The defendant waited until she and the victim were alone, evidencing a desire for secrecy. The defendant later admonished the victim not to tell what happened, further supporting the finding that the defendant knew the act was wrong. Lastly, the defendant was less than 3 months from the age at which capacity is presumed to exist. There was clear and convincing circumstantial evidence that M.S. understood the act of indecent liberties and knew it to be wrong.
[4] Finally, in response to the parties' requests for guidelines concerning the forum of the capacity hearing, we find the separate hearing in Q.D.'s case, and the single hearing of capacity and the substantive charge in M.S.'s case to be appropriate under the different circumstances in each. In Q.D.'s case, prior criminal history was the basis for attempting to prove capacity, and thus a separate hearing avoided prejudice. In M.S.'s case, the facts of the offense were offered to show capacity, and a separate hearing would be unduly repetitive. Rather than delineating a rigid rule, the circumstances should dictate whether a separate hearing is appropriate. See State v. Koloske, 100 Wn.2d 889, 676 P.2d 456 (1984), where we declined endorsement of a fixed forum for ruling on admissibility of impeachment evidence. In the event that it is necessary to show capacity by proof of both criminal history and the particular facts of the offense charged, caution should be employed to prevent the introduction of evidence of prior history from prejudicing the determination on the merits.

*28 IV

SUFFICIENCY OF EVIDENCE OF TRESPASS
Q.D. contends that the evidence introduced to show trespass in the first degree was insufficient to show he entered or remained unlawfully in the building, and, at most, showed possession of recently stolen goods. He argues that possession of recently stolen goods, without other evidence of guilt, is insufficient to show entry in a trespass charge just as it is in burglary. We agree.
[5] Recently, in State v. Mace, 97 Wn.2d 840, 650 P.2d 217 (1982), we reiterated the long-standing law in Washington that proof of possession of recently stolen property is not prima facie evidence of burglary unless accompanied by other evidence of guilt. See State v. Garske, 74 Wn.2d 901, 447 P.2d 167 (1968); State v. Portee, 25 Wn.2d 246, 170 P.2d 326 (1946). Other evidence of guilt may include a false or improbable explanation of possession, flight, use of a fictitious name, or the presence of the accused near the scene of the crime. State v. Mace, supra. While Q.D. was on the school grounds with the keys, the keys were not known to be missing until he was seen with them, and they had last been seen several hours before in a desk in an unlocked office. Thus, both the absence of evidence that he was near the scene at a time proximate to the disappearance of the keys, and the absence of other evidence corroborative of guilt require us to conclude that there was insufficient evidence of trespass in the first degree. We therefore reverse Q.D.'s conviction.

V

APPLICABILITY OF RCW 7.68.035 TO JUVENILE PROCEEDINGS
[6-8] After M.S. was found guilty, in addition to community supervision and community service, the court imposed a $50 assessment pursuant to RCW 7.68.035. Contrary to appellant's assertions, RCW 7.68, Victims of Crimes  Compensation, Assistance, applies to juvenile proceedings. At the time of M.S.'s disposition, the pertinent *29 portions of the act read:
(1) Whenever any person is found guilty in any court of competent jurisdiction of having committed a crime, ... there shall be imposed by the court upon such convicted person a penalty assessment of fifty dollars for a felony or gross misdemeanor and twenty-five dollars for a misdemeanor. The assessment shall be in addition to any other penalty or fine imposed by law.
...
(7) Penalty assessments under this section shall also be imposed in juvenile offense dispositions under Title 13 RCW.
The Legislature later amended section 7 by adding the sentence, "Upon motion of a party and a showing of good cause, the court may modify the penalty assessment in the disposition of juvenile offenses under Title 13 RCW." Laws of 1983, ch. 239, § 1.
The juvenile justice act provides:
The provisions of chapters 13.04 and 13.40 RCW, as now or hereafter amended, shall be the exclusive authority for the adjudication and disposition of juvenile offenders except where otherwise expressly provided.
RCW 13.04.450.
The crime victims compensation act expressly and unambiguously provides for the application of the penalty in juvenile dispositions. Being clear on its face, and unambiguous, we need not interpret the language. State v. McIntyre, 92 Wn.2d 620, 600 P.2d 1009 (1979). While a general statute is usually subjugated to a specific statute, here the crime victims compensation act specifically and expressly addresses itself to the juvenile justice act thus prevailing over rules of statutory construction. See State v. Sargent, 36 Wn. App. 463, 674 P.2d 1268 (1984).
We are likewise not persuaded that the Legislature intended a discretionary application. The use of the word "shall" creates an imperative obligation unless a different legislative intent can be discerned. State v. Bryan, 93 Wn.2d 177, 606 P.2d 1228 (1980). The subsequent amendment to section 7 permits the court on a showing of good *30 cause to modify the assessment. Significantly, the Legislature did not substitute "may" for "shall," and in addition, impliedly required the imposition of the assessment preliminary to the permissive modification upon the party's motion and showing of good cause. State v. Sargent, supra.

CONCLUSION
The infancy defense, codified in RCW 9A.04.050, applies to juvenile proceedings. The proof that a juvenile of 8 years and less than 12 years understood the charged act and knew it to be wrong is by clear and convincing evidence. Because the State met this burden in M.S.'s case, the finding that she committed indecent liberties is affirmed. M.S.'s disposition, which included a $50 penalty assessment under RCW 7.68.035, applicable in a juvenile proceeding, is likewise affirmed. Because the State failed to prove Q.D.'s entry into the school building, his conviction is reversed.
WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.
NOTES
[1] RCW 9A.04.050 provides in part:

"Children under the age of eight years are incapable of committing crime. Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong."
[2] See Walkover, The Infancy Defense in the New Juvenile Court, 31 U.C.L.A.L. Rev. 503 (1984) for a full discussion of the topic.
[3] Senn v. State, 53 Ala. App. 297, 299 So.2d 343 (1974) (clear evidence); Little v. State, 261 Ark. 859, 554 S.W.2d 312 (clearly establish), cert. denied, 435 U.S. 957 (1978); In re Clyde H., 92 Cal. App.3d 338, 154 Cal. Rptr. 727 (1979) (statutory requirement of clear proof); State v. Boardman, 267 A.2d 592 (Del. Super. Ct. 1970) (strong and clear, beyond all reasonable doubt); People v. Lang, 402 Ill. 170, 83 N.E.2d 688 (1949) (strong and clear beyond all reasonable doubt); Adams v. State, 8 Md. App. 684, 262 A.2d 69 (beyond a reasonable doubt), cert. denied, 400 U.S. 928 (1970); Commonwealth v. Durham, 255 Pa. Super. 539, 389 A.2d 108 (1978) (as element of crime, must be proven beyond a reasonable doubt); State ex rel. Cain v. Skeen, 137 W. Va. 806, 74 S.E.2d 413 (1953) (clear and convincing), but cf. State v. Vineyard, 81 W. Va. 98, 93 S.E. 1034 (1917) (clear and strong, and beyond all reasonable doubt).