67 Wn. App. 721 (1992)
840 P.2d 210
THE STATE OF WASHINGTON, Respondent,
v.
K.R.L., Appellant.
No. 14458-1-II.
The Court of Appeals of Washington, Division Two.
November 16, 1992.
William J. McDowell, for appellant (appointed counsel for appeal).
David H. Bruneau, Prosecuting Attorney, and Deborah S. Kelly, Deputy, for respondent.
ALEXANDER, J.
Eight-year-old K.R.L. appeals a juvenile court conviction for residential burglary, contending that the State did not present sufficient evidence to overcome the presumption that he was incapable of committing the crime. We reverse.
In July 1990, K.R.L., who was then 8 years 2 months old, was playing with a friend behind a business building in *722 Sequim. Catherine Alder, who lived near the business, heard the boys playing and she instructed them to leave because she believed the area was dangerous. Alder said that K.R.L.'s response was belligerent, the child indicating that he would leave "in a minute." Losing patience with the boys, Alder said "[n]o, not in a minute, now, get out of there now." The boys then ran off.
Three days later, during daylight hours, K.R.L. entered Alder's home without her permission. He proceeded to pull a live goldfish from her fishbowl, chopped it into several pieces with a steak knife and "smeared it all over the counter." He then went into Alder's bathroom and clamped a "plugged in" hair curling iron onto a towel.
Upon discovering what had taken place, Alder called the Sequim police on the telephone and reported the incident. A Sequim police officer contacted K.R.L.'s mother and told her that he suspected that K.R.L. was the perpetrator of the offense against Alder. K.R.L.'s mother confronted the child with the accusation and he admitted to her that he had entered the house. She then took K.R.L. to the Sequim Police Department where the child was advised of his constitutional rights by a Sequim police officer. This took place in the presence of K.R.L.'s mother who indicated that she did not believe "he really understood." K.R.L. told the police officer that he knew it was wrong to enter Alder's home.[1]
K.R.L. was charged in Clallam County Juvenile Court with residential burglary, a class B felony. At trial, considerable testimony was devoted to the issue of whether K.R.L. possessed sufficient capacity to commit that crime. The juvenile court judge heard testimony in that regard from K.R.L.'s mother, Catherine Alder, two school officials, a Sequim policeman who had dealt with K.R.L. on two prior *723 occasions as well as the incident leading to the charge, one of K.R.L.'s neighbors and the neighbor's son.
K.R.L.'s mother, the neighbor, the neighbor's son and the police officer testified to an incident that had occurred several months before the alleged residential burglary. This incident was referred to by the police officer as the "Easter candy episode". Their testimony revealed that K.R.L. had taken some Easter candy from a neighbor's house without permission. As a consequence, the Sequim police were called to investigate. K.R.L. responded to a question by the investigating officer, saying to him that he "knew it was wrong and he wouldn't like it if somebody took his candy." The same officer testified to another incident involving K.R.L. This was described as the "joyriding incident", and it occurred prior to the "Easter candy episode". It involved K.R.L. riding the bicycles of two neighbor children without having their permission to do so. K.R.L. told the police officer that he "knew it was wrong" to ride the bicycles.
The assistant principal of K.R.L.'s elementary school testified about K.R.L.'s development. He said that K.R.L. was of "very normal" intelligence. K.R.L.'s first grade teacher said that K.R.L. had "some difficulty" in school. He said that he would put K.R.L. in the "lower age academically".
K.R.L.'s mother testified at some length about her son and, in particular, about the admissions he made to her regarding his entry into Alder's home. Speaking of that incident, she said that he admitted to her that what he did was wrong "after I beat him with a belt, black and blue." She also said that her son told her "that the Devil was making him do bad things."
The juvenile court rejected the argument of K.R.L.'s counsel that the State had not presented sufficient evidence to show that K.R.L. was capable of committing a crime. It found him guilty, saying:
[F]rom my experience in my eight, nine years on the bench, it's my belief that the so-called juvenile criminal system is a paper tiger and it's not going to be much of a threat to Mr. [K.R.L.], so I don't think that for that reason there is a whole lot to protect him from.
*724 [1] There is only one issue  did the trial court err in concluding that K.R.L. had the capacity to commit the crime of residential burglary?[2] RCW 9A.04.050 speaks to the capability of children to commit crimes and, in pertinent part, provides:
Children under the age of eight years are incapable of committing crime. Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong.
This statute applies in juvenile proceedings. State v. Q.D., 102 Wn.2d 19, 23-24, 685 P.2d 557 (1984).
Because K.R.L. was 8 years old at the time he is alleged to have committed residential burglary, he was presumed incapable of committing that offense. The burden was, therefore, on the State to overcome that presumption and that burden could only be removed by evidence that was "clear and convincing". State v. Q.D., 102 Wn.2d at 26. Thus, on review we must determine if there is evidence from which a rational trier of fact could find capacity by clear and convincing evidence. See In re C.B., 61 Wn. App. 280, 810 P.2d 518 (1991).
There are no reported cases in Washington dealing with the capacity of 8-year-old children to commit crimes. That is not too surprising in light of the fact that up to age 8, children are deemed incapable of committing crimes. Two cases involving older children are, however, instructional. In State v. Q.D., supra, our Supreme Court looked at a case involving a child who was charged with committing indecent liberties. In concluding that there was clear and convincing circumstantial evidence that the child understood the act of indecent liberties and knew it to be wrong, the court stressed the fact that the child was only 3 months shy of age 12, the age at which capacity is presumed to exist. *725 State v. Q.D., 102 Wn.2d at 27. The court also placed stock in the fact that the defendant used stealth in committing the offense as well as the fact that she had admonished the victim, a 4 1/2-year-old child whom she had been babysitting, not to tell what happened. State v. Q.D., 102 Wn.2d at 27.
In another case, State v. S.P., 49 Wn. App. 45, 746 P.2d 813 (1987), rev'd on other grounds, 110 Wn.2d 886, 756 P.2d 1315 (1988), Division One of this court upheld a trial judge's finding that a child, S.P., had sufficient capacity to commit the crime of indecent liberties. In so ruling, the court noted that (1) S.P. was 10 years of age at the time of the alleged acts; (2) S.P. had had sexual contact with two younger boys during the prior year; (3) in treatment for the earlier incident, S.P. acknowledged that sexual behavior was wrong; (4) S.P. was aware that if convicted on the present charge, detention could result; and (5) experts concluded that S.P. had an extensive knowledge of sexual terms and understood the wrongfulness of his conduct toward the victims.
[2] None of the factors that the courts highlighted in the two aforementioned cases is present here. Most notably, K.R.L. is considerably younger than either of the children in the other two cases. In addition, we know almost nothing about what occurred when K.R.L. went into Alder's home. Furthermore, there was no showing that he used "stealth" in entering Alder's home. We know only that he entered her home in daylight hours and that while he was there he committed the act. Neither was there any showing that K.R.L. had been previously treated for his behavior, as was the case in State v. S.P., supra.
The State emphasizes the fact that K.R.L. appeared to appreciate that what he did at Alder's home and on prior occasions was wrong. When K.R.L. was being beaten "black and blue" by his mother, he undoubtedly came to the realization that what he had done was wrong. We are certain that this conditioned the child, after the fact, to know that what he did was wrong. That is a far different thing than one appreciating the quality of his or her acts at the time the act is being committed.
*726 In arguing that it met its burden, the State placed great reliance on the fact that K.R.L. had exhibited bad conduct several months before during the so-called "Easter candy" and "joyriding" incidents. Again, we do not know much about these incidents, but it seems clear that neither of them involved serious misconduct and they shed little light on whether this child understood the elements of the act of burglary or knew that it was wrong.
In State v. Q.D., our Supreme Court emphasized that a capacity determination must be made in reference to the specific act charged. State v. Q.D., 102 Wn.2d at 26. If the State shows no more than a general understanding of the justice system, the State does not meet its burden of showing an understanding of the act and knowledge that it was wrong. Indeed, the court indicated that an understanding of the wrongfulness of one crime does not alone establish capacity in regard to another crime. State v. Q.D., 102 Wn.2d at 26.
Here, we have a child of very tender years  only two months over 8 years. While the State made a valiant effort to show prior bad acts on the part of the child, an objective observer would have to conclude that these were examples of behavior not uncommon to many young children. Furthermore, there was no expert testimony in this case from a psychologist or other expert who told the court anything about the ability of K.R.L. to know and appreciate the gravity of his conduct. Although two school officials testified, one of them said K.R.L. was of an age lower than 8, "academically". In short, there is simply not enough here so that we can say that in light of the State's significant burden, there is sufficient evidence to support a finding of capacity.
Reversed.
PETRICH, C.J., and SEINFELD, J., concur.
NOTES
[1] The statement given by K.R.L. to the officer was not offered by the State to prove guilt. Initially, the State took the position that K.R.L. fully understood those rights and that he had made a free and voluntary waiver of rights. Defense counsel objected to the admission of the statements and eventually the State withdrew its offer of the evidence, concluding that the evidence was cumulative in that K.R.L.'s admissions were already in evidence through the testimony of his mother.
[2] Residential burglary is defined in RCW 9A.52.025 as:

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling...."