[No. 14756-8-III. Division Three. April 8, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES P.S., *Petitioner*.

*Hugh M. Spall, Jr.*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Lauri M. Boyd, Deputy,* for respondent.

SCHULTHEIS, A.C.J. — Children from the age of 8 and under 12 years of age are presumed incapable of committing a crime. RCW 9A.04.050. James S. was charged by information with first degree rape of a child. The charge was based on an act of sexual intercourse with a 3-year-old girl, M., committed when James was 11. In a pretrial hearing, the trial court found that he had the capacity to understand the act charged and its wrongfulness. We granted review of the capacity determination and reverse, holding that the evidence is insufficient to rebut the statutory presumption of incapacity.

In September 1994, M.'s brother told his father, Kelly

B., that M. and James were up at the "cabin," an abandoned shack about 300 yards from the B. home. Mr. B. went to the cabin, opened the door, and found James and M. sitting facing each other on a bench. M.'s bathing suit top was pulled down and James's pants were unfastened. Mr. B. told James to go home and then asked his daughter what had happened. She told him James had asked her to take off her clothes and she indicated he had touched her vagina.

Mr. B. called the police. In the ensuing investigation, officers interviewed James and M.'s brother. According to Sergeant Arnie Belton, James appeared nervous when interviewed soon after the incident. He at first denied seeing M. that day or being with her in the cabin. Eventually, he admitted he was in the cabin with her and her brother. He also said he and the other children were just playing and remained fully clothed. M.'s brother told another officer that he had entered the cabin earlier and found James with his pants down. He said James quickly pulled up his pants and told him to leave. M.'s brother then went home and told his father M. and James were in the cabin.

Sergeant Belton interviewed James a month later and reported the boy again appeared nervous. In another interview a week later, James waived his *Miranda*[1] rights and gave a taped statement after his mother left the room. He admitted M. took off her clothes, he pulled down his pants, he touched M.'s vagina with his finger and he slightly penetrated her vagina with his penis. At the end of his statement, James said, "I'm sorry for what I done, I know it was bad and I feel real guilty about it." James was charged by information in juvenile court with first degree rape of a child, RCW 9A.44.073.

James's statement was admitted at the capacity hear-

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966). The record does not indicate whether James's mother waived his rights pursuant to RCW 13.40.140(10). If not, his statement would not be admissible at trial, but was properly admitted at the capacity hearing. *State v. Linares*, 75 Wn. App. 404, 406-09, 880 P.2d 550 (1994).

ing, held March 1995. Several other witnesses testified, including Sergeant Belton, Mr. B., James's fifth grade teacher, the assistant principal at his school, a county probation officer who had interviewed James after the incident, and James's mother.

The fifth grade teacher testified that James spent almost half of every school day in special education programs. Although she felt James had difficulty understanding things he read, she thought he was capable of learning concepts that were told to him, especially if told repeatedly. She testified that the school offered "good touch/bad touch" courses in the lower elementary grades and offered a human sexuality class in fifth grade. The fifth grade course emphasized the physiology of the sexual organs and their function, without going into "the appropriateness of it." She said the assistant principal taught human sexuality to the boys when James was in fifth grade.

Merl Brothers, the assistant principal, testified he did not remember having James in a class. He found James to be very polite and social, with no discipline problems. Testing showed that James was borderline in cognitive skills and read at a first grade level. Mr. Brothers described the week-long human sexuality class as a lesson on sexual reproduction and AIDS awareness. He taught nothing concerning male/female relationships, such as dating, marriage, etc.

Yakima County Probation Officer Manice Texeira-Zike interviewed James for an underage referral. She felt that James understood the words penis and vagina but did not understand the meaning of rape or that the act was wrong. In her opinion, James did not begin to understand that what he was doing was wrong until M.'s father came into the cabin and told him to leave. Ms. Texeira-Zike had not been told at the time of the interview that James's victim was only three years old. She did not think that fact had a bearing on her determination of whether he knew the act was wrong and that he could be punished for it.

James's mother testified she had taught her son to cover

his private parts and that he should not touch people on their intimate parts. She had not discussed other sexual matters with him, however, because he had never shown any interest. She blamed a sixth grade sex education course for confusing her son. (The incident occurred early in James's sixth grade year.)

At the end of testimony, the trial judge stated the following facts were most important in his decision: (1) James was almost 12 years old at the time of the incident; (2) he is mildly mentally retarded, based on his reading skills, but has at least average verbal language skills; (3) his mother is very attentive and taught him that he could not touch her or his older sister's private parts; (4) he learned good touch/bad touch in school; (5) he first denied having contact with M. or being with her in the cabin; (6) the taped statement showed he understood verbal discussions; and (7) Ms. Texeira-Zike did not think he knew his sexual contact could lead to legal punishment. On the basis of the tests for capacity found in *State v. Q.D.*, 102 Wn.2d 19, 685 P.2d 557 (1984) and *State v. Linares*, 75 Wn. App. 404, 880 P.2d 550 (1994), the court found that James had the capacity to know that his act of intercourse was wrong, both morally and legally, and would be punished.

After the trial court entered findings and conclusions, James moved for discretionary review to this court. The commissioner found that the trial court's ruling was sufficiently supported by clear and convincing evidence and denied review. James moved to modify the commissioner's ruling, the motion was granted and the case was set for argument.

■■ The sole issue on appeal is whether the trial court erred in concluding James had the capacity to commit first degree rape. James contends the State failed to show that he understood the nature of his act or that it was wrong.

A child from the age of 8 and under 12 years of age is presumed incapable of committing any crime. RCW 9A.04.050. This presumption may be rebutted by clear and

convincing evidence that the child had sufficient capacity to understand the act and to know it was wrong. RCW 9A.04.050; *Q.D.*, 102 Wn.2d at 26; *Linares*, 75 Wn. App. at 410. On appeal, we must determine if a rational trier of fact could find capacity by clear and convincing evidence. *State v. K.R.L.*, 67 Wn. App. 721, 724, 840 P.2d 210 (1992).

 The determination of capacity must be made in reference to the specific act charged and is necessarily fact-specific. *Q.D.*, 102 Wn.2d at 26; *Linares*, 75 Wn. App. at 415. In addition to the nature of the crime, other elements may be relevant in determining whether the child knew the act was wrong: (1) the child's age and maturity; (2) whether the child exhibited a desire for secrecy; (3) whether the child admonished the victim not to tell; (4) prior conduct similar to that charged; (5) any consequences that attached to that prior conduct; and (6) acknowledgment that the behavior is wrong and could lead to detention. *Q.D.*, 102 Wn.2d at 27; *Linares*, 75 Wn. App. at 415; *State v. S.P.*, 49 Wn. App. 45, 47, 746 P.2d 813 (1987), *rev'd on other grounds*, 110 Wn.2d 886, 756 P.2d 1315 (1988).

First degree rape of a child requires proof that the offender committed an act of sexual intercourse on a child younger than 12 years old and more than 24 months younger than the offender. RCW 9A.44.073(1). Consequently, the specific act James must have understood is sexual intercourse. Ms. Texeira-Zike testified that James knew the names of the sexual organs but did not understand what rape meant. James's teacher and principal testified that the reproductive process and inappropriate touching were taught at school, but they could not prove James had attended these lessons (in light of the fact that he was pulled from regular classes almost one-half of each school day), and the teacher noted they did not discuss the appropriateness of sexual activity. On balance, it is not clear that

James understood his conduct manifested sexual intercourse.[2]

The crucial question, however, is whether James knew his conduct was legally wrong. *Linares*, 75 Wn. App. at 415 (one factor showing capacity is acknowledgment that behavior could lead to detention). The trial court found that James exhibited knowledge that his act was wrong when he showed a desire for secrecy (taking M. to an abandoned shack, pulling up his pants when M.'s brother entered and telling him to go away, and lying about being with M. that day) and when he declared at the end of his recorded statement that his behavior was wrong. While it is "intuitively obvious"[3] from this evidence that James knew exposing and touching private areas were wrongful, it is less obvious that he knew he would suffer societal consequences such as juvenile detention.

Contributing to the difficulty in showing James understood the wrongfulness of his conduct is the fact that he is marginally mentally retarded. Although he acknowledged what he did was wrong, this statement was made after he had been interviewed twice earlier. Clearly, by this time he had discovered that his conduct was wrong. *See K.R.L.*, 67 Wn. App. at 725 (a child who confessed after a beating

---

[2]James cites two cases regarding the capacity of a developmentally disabled person to consent to sexual intercourse: *State v. Ortega-Martinez*, 124 Wn.2d 702, 881 P.2d 231 (1994) and *State v. Summers*, 70 Wn. App. 424, 853 P.2d 953, *review denied*, 122 Wn.2d 1026 (1993). The mental capacity defense to rape requires consideration of the definition of mental incapacity found in RCW 9A.44.010(4): "[T]hat condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause." *Ortega-Martinez* held that the defendant must show that the mentally retarded victim understood the nature and consequences of sexual intercourse when he or she consented. This understanding requires more than a knowledge of the mechanics of reproduction. The defendant supports this defense with evidence that the victim/consenter understood such consequences as pregnancy, disease, emotional intimacy and disruption in established relationships. *Ortega-Martinez*, 124 Wn.2d at 711-12. These cases are inapposite to the issue of the capacity of a child offender because the emotional consequences described are probably far beyond the experience or understanding of a preteenager.

[3]*Linares*, 75 Wn. App. at 414 n.12.

had been "conditioned" to know that what he did was wrong).

*Linares* recognized that the State carries a greater burden when it has to prove a child appreciates the wrongfulness of certain sexual acts. *Linares*, 75 Wn. App. at 414 n.12. The State must prove the child not only understood the nature of the act, but that it was punishable in court. *Linares*, 75 Wn. App. at 415. That burden was not met here with clear and convincing evidence. *Q.D.*, 102 Wn.2d at 26.

Reversed and dismissed.

KURTZ, J., and MUNSON, J. Pro Tem., concur.

Review granted at 133 Wn.2d 1001 (1997).