[No. 39044-9-I.  Division One.  July 28, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. J.F., *Appellant*.

Christopher Gibson and Nielsen, Broman & Associates, P.L.L.C., for appellant.

Norm Maleng, Prosecuting Attorney, and Mark G. Stockdale, Deputy, for respondent.

ELLINGTON, J. — J.F. was charged with reckless burning in the second degree. The offense was alleged to have occurred on July 3, 1995, when J.F. was 10 years old, so J.F. was statutorily presumed incapable of committing the offense. The trial court concluded that the State had met its burden of rebutting the presumption of incapacity, and J.F. pleaded guilty. We find the evidence sufficient to show J.F.'s capacity by clear and convincing evidence and therefore affirm the trial court.

## FACTS

On July 3, 1995, while serving as volunteer house-

watchers for the Enumclaw Police Department, Arthur and Sandy Beane heard voices coming from behind an abandoned house. Arthur Beane saw two young boys pushing their bicycles away from the house. He asked them to stop, and they complied. The boys, J.F. and his cousin,[1] told Beane that they knew they weren't supposed to be on the property, but were just looking around "to see what the bigger kids were doing." The cousin told Beane that a mattress was on fire on the second floor of the house and that he and J.F. had tried to put it out. While the cousin was telling Beane about the fire, J.F. repeatedly ordered him to be quiet.

Police officers arrived and called the fire department. One of the officers asked the boys if they had matches, lighters, or the like. J.F. pulled a butane lighter from his pocket and told the officer he had found it in an alley. At the police station, J.F.'s cousin told an officer that J.F. lit the mattress with the lighter he took from his pocket. J.F. eventually prepared a written statement in which he admitted setting the mattress on fire.

J.F. was charged with second degree reckless burning. Because of J.F.'s age, the court held a capacity hearing. The court heard testimony of Arthur Beane, J.F.'s mother, J.F.'s elementary school principal, and a public educator for the Enumclaw fire department. The court concluded that the State established that J.F. had the capacity to understand that the conduct of which he was accused was wrong and that he knew the conduct was wrong. J.F. was arraigned and entered a plea of not guilty. Subsequently, he changed his plea to guilty.

## DISCUSSION

RCW 9A.04.050 establishes a statutory presumption of incapacity where a child is between 8 and 12 years

---

[1]At the time of the offense, J.F.'s cousin was five days shy of his twelfth birthday.

old.[2] This presumption applies in juvenile proceedings. *State v. Q.D.*, 102 Wn.2d 19, 21, 685 P.2d 557 (1984). The State has the burden of rebutting the presumption of incapacity by clear and convincing evidence. *Q.D.*, 102 Wn.2d at 21. On appeal of a determination of capacity, the trial court's decision should be affirmed if there was evidence from which a rational trier of fact could find capacity by clear and convincing evidence. *State v. K.R.L.*, 67 Wn. App. 721, 724, 840 P.2d 210 (1992).

We agree with the court in *State v. Linares*, 75 Wn. App. 404, 880 P.2d 550 (1994), that a juvenile's understanding of the legal prohibition and legal consequences of his or her conduct is not the sine qua non for determining whether he or she appreciates the wrongfulness of the conduct.[3] *Linares*, 75 Wn. App. at 414 (following *State v. Crenshaw*, 98 Wn.2d 789, 792-800, 659 P.2d 488 (1983)). The nature of the crime is, however, relevant to this determination. *Linares*, 75 Wn. App. at 414. "The more intuitively obvious the wrongfulness of the conduct, the more likely it is that a child is aware that some form of societal consequences will attach to the act." *Linares*, 75 Wn. App. at 415 n.12.

Here, the record shows that J.F. learned about the wrongfulness of setting fires at least as early as age seven. Lisa Lapsansky, the public educator for the Enumclaw fire department, testified that in 1992, J.F.'s mother brought him to the fire station with concerns about his curiosity with fires. At that meeting, Lapsansky conducted a

---

[2]"Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong."

[3]To the extent the court in *State v. Erika D.W.*, 85 Wn. App. 601, 934 P.2d 704 (1997), departed from *Linares* by requiring the State to prove that the juvenile knew his or her conduct was illegal in order to rebut the presumption of incapacity, *State v. Erika D.W.*, 85 Wn. App. at 606-07, we decline to follow it. Such a showing might be necessary to rebut the presumption of incapacity by clear and convincing evidence where certain sexual offenses are involved, but not where, as in the case of setting fires, children learn the danger or wrongfulness of the conduct at an early age. *See generally, Linares*, 75 Wn. App. at 414-15 n.12.

"child interview" with J.F., who was seven years old at the time. Lapsansky instructed J.F. on fire safety matters including "what you should do if you find matches or lighters, who should use matches or lighters, what are their uses, good fires, bad fires, and then, of course, some ways they can protect themselves as far as if they get fire on their clothes." Lapsansky met with J.F. again in October, 1994, after J.F. was found with a lighter at school and had lit a cigarette. Again, Lapsansky reviewed fire safety information with J.F., including a discussion about "good fires, bad fires."

Children typically learn at an early age about the dangers of setting fires. Here, J.F. was taken to the fire station and subjected to two one-on-one lectures on fire safety within three years of his setting fire to the mattress. In light of this, by the time J.F. set the mattress on fire, a rational trier of fact could conclude that the wrongfulness of his conduct was intuitively obvious to him.

Other factors besides the nature of the crime that are relevant in determining whether the child knew the act he or she was committing was wrong are:

> (1) whether the child evinced a desire for secrecy, (2) the child's age, (3) prior conduct similar to that charged, (4) any consequences that attached to that conduct, and (5) acknowledgment that the behavior is wrong and could lead to detention.

(Footnote and citation omitted.) *State v. Linares*, 75 Wn. App. at 415 (citing *State v. S.P.*, 49 Wn. App. 45, 47, 746 P.2d 813 (1987), *rev'd on other grounds*, 110 Wn.2d 886, 756 P.2d 1315 (1988)). We consider each of these factors as applied to the record before us.

J.F. and his cousin showed a desire for secrecy during their meeting with the Beanes. For example, shortly after encountering Arthur Beane, both boys asked him whether he was a police officer. Even more indicative of J.F.'s desire for secrecy is the fact that while J.F.'s cousin was describ-

ing the fire to Arthur Beane, J.F. repeatedly told him to "shut up."

The next *Linares* factor is the child's age. J.F. was 10 years old at the time of the incident and therefore in the middle of the range of ages to which the presumption of incapacity attaches. We find that J.F.'s chronological age does not weigh one way or the other in determining his capacity. Nor do we find that the fact that J.F. was diagnosed with attention deficit disorder changes the capacity determination. J.F.'s mother testified that this condition causes him to act on impulses without thinking of the consequences. He had not had his medication to control this condition on the day of the incident. There was, however, no evidence to indicate that J.F. was functioning at less than a normal intellectual or cognitive level on that day or that missing his medication rendered him unable to understand that his conduct was wrong. Based upon the evidence in the record before us, we find that J.F.'s attention deficit disorder has no bearing on the capacity determination.

J.F. had previously engaged in conduct similar to that charged, another *Linares* factor. When he was seven years old, he set fire to some leaves.[4] Two years later, J.F. was found in possession of a lighter at school. He lit a cigarette, but did not then start any other fire.

Consequences attached to both of these prior incidents. Although she could not recall the specifics, J.F.'s mother testified that after the first incident, when J.F. was seven years old, she punished him, either by grounding him or sending him to his room, "or something like that." J.F. told Lapsansky that after this incident, his mother spanked him and sent him to his room.[5] As another consequence of this behavior, J.F. was taken to the fire depart-

---

[4]The record is unclear whether J.F. set fire to leaves in his backyard or in the playground of the day care facility he was attending. This ambiguity is not relevant to the issues presented.

[5]J.F. also told Lapsansky that he was usually punished for "[l]ighting fires and taking things that aren't his."

ment to listen to Lapsansky's fire safety lecture. After the second incident, when J.F. was found in possession of the lighter, he was suspended from school and taken once again to meet with Lapsansky for more fire safety education.

The last *Linares* factor is whether the juvenile acknowledged that the conduct was wrong. However, "a child's after-the-fact acknowledgment that he or she understood that the conduct was wrong is insufficient, standing alone, to overcome the presumption of incapacity by clear and convincing evidence." *State v. Linares*, 75 Wn. App. at 417. This is because, after, for example, punishment by a parent[6] or interrogation by a police officer,[7] the wrongfulness of the conduct has become obvious to the child and is not indicative of the child's awareness of the wrongfulness of his or her act at the time it was committed.

In the present case, J.F. acknowledged to Arthur Beane that it was wrong for him and his cousin to be on the property and in the abandoned house. But, rather than admitting the wrongfulness of setting a fire, J.F. denied any responsibility. J.F. did not acknowledge the wrongfulness of his conduct until he entered a guilty plea. The timing of this is similar to the children's acknowledgments in *K.R.L.* and *Linares*, after the fact.

Had the evidence not supported the other *Linares* factors, the presumption of incapacity would not have been overcome solely by J.F.'s after-the-fact acknowledgment. In light of the other evidence, however, we find that a rational trier of fact could have found capacity by clear and convincing evidence. The disposition is affirmed.[8]

---

[6]In *State v. K.R.L.*, 67 Wn. App. 721, 840 P.2d 210 (1992), the child admitted to his mother that what he had done was wrong after the mother had beaten him "black and blue." *K.R.L.*, 67 Wn. App. at 725.

[7]In *Linares*, the child gave a statement to a police officer acknowledging that his conduct was wrong after the officer had separated the child from his companion and had read both children their *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694, 10 A.L.R.3d 974 (1966).

[8]We reject the State's argument that J.F. waived his right to challenge the court's determination of capacity by pleading guilty. Capacity is a jurisdictional

GROSSE and AGID, JJ., concur.

Review denied at 135 Wn.2d 1009 (1998).

issue and was not a matter with which J.F. was charged in the information.
Capacity was not waived when J.F. entered his guilty plea to the charge.