[No. 72816-0.   En Banc.]
Argued September 11, 2003.    Decided March 11, 2004.

THE STATE OF WASHINGTON, *Respondent*, v. ANDREW RAMER, *Petitioner*.

Robert M. Quillian, for petitioner.

Edward G. Holm, Prosecuting Attorney, and Steven C. Sherman, Deputy, for respondent.

CHAMBERS, J. — Andrew Ramer, an 11 year old juvenile defendant, was charged with two counts of first degree rape of a child. The Thurston County Superior Court found Ramer lacked the capacity to commit the crime. The State appealed, and in an unpublished opinion Division Two of the Court of Appeals reversed. *State v. Ramer*, noted at 112 Wn. App. 1006 (2002). Because there is evidence in the record to support the superior court's finding, we reverse.

## FACTS

Ramer, his nine year old sister, Kensie, and his mother, Dina Lawrence, were temporarily living with their friends, the Briscoes. On January 25, 2001, another child in the home told Deanna Briscoe that Ramer was in the bathroom with his arm around her seven year old son, ZPG. Briscoe asked Ramer what happened, and Ramer "basically said 'nothing.' " Clerk's Papers (CP) at 20. When ZPG was asked about the incident, he told his mother that Ramer had "rubbed his butt." CP at 21.

Briscoe finished getting the children ready for school and did not immediately pursue the subject further. Later that evening when she resumed her inquiry, ZPG told her that, in addition to "rubbing his butt," Ramer had also "placed his penis inside of [ZPG's] butt." CP at 21. When asked, Ramer freely admitted he had done these things.

The next morning, Briscoe and Lawrence contacted several social service agencies. The mothers were advised to go to the police. At the police station, Lawrence waived Ramer's right to counsel by granting Detective Beverly Reinhold's request to talk with Ramer alone. Before speak-

ing with Reinhold, Ramer was not told that he might be arrested or sent to detention.[1]

While talking with Detective Reinhold, Ramer revealed that for about two weeks he had sexual contact with ZPG approximately twice a week. Ramer also recounted having sexual contact with ZPG several years earlier when his family had previously lived with the Briscoes.[2] Detective Reinhold asked Ramer if he thought what he had done to ZPG was wrong. First, Ramer responded " 'kind of sort of wrong.' " CP at 25. Then he added, " '[i]t wasn't wrong because he was into it too.' " *Id.* When asked to give examples of wrong behavior, Ramer said it would be wrong "to steal, murder, or poach." CP at 26. At the end of the conversation with Detective Reinhold, Ramer was arrested and charged with two counts of first degree rape of a child.

Because of Ramer's age, a hearing to determine his capacity to commit first degree rape of a child was held before Thurston County Superior Court Commissioner Scott Neilson. Detective Reinhold testified about her conversation with Ramer at the police station. The defense was allowed to call two witnesses out of order: Dr. Brett Trowbridge, Ph.D., J.D.,[3] a forensic psychologist, and Peg Cain, M.A.,[4] a mental health specialist at St. Peter's Hospital psychiatric unit, who also performs juvenile and adult "safe to be at large" evaluations for Thurston County. Both witnesses for the defense had evaluated Ramer and had prepared written reports.

---

[1] Whether Ramer received a proper *Miranda* warning is not at issue. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Improperly obtained statements are admissible at a capacity hearing, even though they would not be admissible at the substantive trial. *State v. Linares*, 75 Wn. App. 404, 407, 880 P.2d 550 (1994).

[2] Additionally, Ramer said he had sexual contact a "few times" with his sister. CP at 23-24.

[3] Dr. Trowbridge, who has been in private practice as a forensic psychologist since 1986, is a published expert in the area of child capacity. He is also a licensed attorney who worked as a King County prosecutor for six years.

[4] Cain holds a master's degree in counseling and community psychology. She has 20 years of experience in the mental health field.

Dr. Trowbridge based his opinion upon his evaluation of Ramer. He testified that, in his opinion, Ramer did not understand the act of having sexual contact with a much younger child. He also testified that he believed Ramer did not understand that it was wrong, especially if the other child enjoys and voluntarily participates in the act. Specifically, Dr. Trowbridge opined:

Q. Based on your evaluation and investigation, it's your conclusion that [Ramer] does not possess sufficient information or ability to come to the understanding of what rape of a child meant in terms of his committing the act in this instance?

A. Yes. Because at that time of the alleged offense I don't think he did have that understanding.

CP at 52-53.

He did not understand if something felt good why it was wrong.

CP at 44-45.

[H]e thought if the child consented that that made it not wrong.

CP at 54.

Similarly, Cain testified that Ramer had "no concept of how serious the charge was." CP at 70. She also testified that Ramer asked her why sexual contact with ZPG was considered rape when it felt good, ZPG wanted to participate, and ZPG "really liked it." CP at 71. Cain also testified that Ramer's attitude and demeanor led her to believe that he did not understand that sexual contact was inappropriate behavior and that he did not know that what he had been doing with ZPG was wrong.

The State then called Thomas Nore, M.S.W., a juvenile court probation counselor with 26 years of experience. Nore did not evaluate Ramer, nor did he take notes of his conversations with Ramer. He based his opinion on the written reports of Dr. Trowbridge and Cain and his conversations with Ramer while transporting him to and from a psychosexual evaluation by Trudy Howe[5] and on other occasions. Nore testified that he believed Ramer understood

[5] Howe did not testify at Ramer's capacity hearing.

that his conduct was wrong. Nore also testified that Ramer had been told by his parents that "sexual contact with each other in the home or anyone else" was wrong. CP at 95. Nore opined that Ramer "had knowledge and experience far beyond any 11 year old I'd ever met. In fact far beyond some 16-, 17-year-olds." CP at 89.[6] It was Nore's opinion that Ramer knew the serious consequences of sexual contact and had the capacity to commit the crime.

The commissioner concluded that Ramer understood his conduct was wrong and "understood the act of Rape of a Child first degree." CP at 130. Ramer moved for revision in the superior court before the Honorable Christine A. Pomeroy. Judge Pomeroy read the record and heard arguments before finding Ramer lacked capacity to commit the crime. Judge Pomeroy found that Ramer was "a highly sexualized young person, who clearly was confused about appropriate sexual behaviors and could not understand the prohibitions on sexual behavior with other children." CP at 137. The State appealed the superior court's finding. Finding Ramer did have capacity to commit the crime, the Court of Appeals reversed. Ramer sought and we granted discretionary review. *State v. Ramer*, 149 Wn.2d 1008, 67 P.3d 1097 (2003).

## ANALYSIS

### Standard of Review

█ We do not review a trial court's finding de novo with respect to a child's capacity to commit a crime. *State v. J.P.S.*, 135 Wn.2d 34, 37, 954 P.2d 894 (1998). Rather, we review the record for evidence sufficient to support the superior court's finding. When the superior court finds capacity, we review the record to determine whether there

---

[6] Nore further testified that Ramer knew his biological father was currently incarcerated for sexually molesting his sister. Although it is possible that Ramer may have been molested by his father as well, Ramer has no recollection of being molested. After his father's incarceration, Ramer's mother remarried. This stepfather committed suicide after finding out that he was going to be prosecuted for molesting Ramer's sister.

is substantial evidence establishing that the State met its burden of overcoming the statutory presumption that children under 12 years of age are incapable of committing crime[7] by clear and convincing evidence. *State v. Q.D.*, 102 Wn.2d 19, 21, 25-26, 685 P.2d 557 (1984); *accord J.P.S.*, 135 Wn.2d at 37. When the trial court finds a lack of capacity, we review the record to determine whether a rational trier of fact could find that the State failed to overcome the presumption that the child lacked capacity.

## RULING TO BE REVIEWED

■ ■ We review the superior court's ruling, not the commissioner's. All commissioner rulings are subject to revision by the superior court. RCW 2.24.050;[8] *see also* CONST. art. IV, § 23. On revision, the superior court reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner.[9] *In re Marriage of Moody*, 137 Wn.2d 979, 993, 976 P.2d 1240 (1999); *State v. Wicker*, 105 Wn. App. 428, 433, 20 P.3d 1007 (2001). Once the superior court makes a decision on revision, "the appeal is from the superior court's decision, not the commissioner's." *State v. Hoffman*, 115 Wn. App. 91, 101, 60 P.3d 1261 (2003).

---

[7] RCW 9A.04.050 provides in part:

Children of eight and under twelve years of age are presumed to be incapable of committing crime.

[8] In relevant part, RCW 2.24.050 provides:

All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner.

[9] Any language to the contrary in *State v. Lown*, 116 Wn. App. 402, 66 P.3d 660 (2003), is disapproved.

CAPACITY

■ By statute, a child "under 12 years of age is presumed incapable of committing any crime." *State v. Erika D.W.*, 85 Wn. App. 601, 605, 934 P.2d 704 (1997); RCW 9A.04.050. The statute provides, in part:

> Children under the age of eight years are incapable of committing crime. Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong.

RCW 9A.04.050. The statute codifies what is known as "the infancy defense." The purpose of the infancy defense is "to protect from the criminal justice system those individuals of tender years who are less capable than adults of appreciating the wrongfulness of their behavior." *Q.D.*, 102 Wn.2d at 23.

■■ In order to overcome the presumption of incapacity, the State must provide clear and convincing evidence that the child had sufficient capacity to understand the act and to know that it was wrong. *J.P.S.*, 135 Wn.2d at 38; *Q.D.*, 102 Wn.2d at 26. A capacity determination is fact-specific and must be in reference to the specific act charged. *J.P.S.*, 135 Wn.2d at 37; *Q.D.*, 102 Wn.2d at 26. It is not necessary, however, for the child to understand that the act would be punishable under the law. *J.P.S.*, 135 Wn.2d at 38. The focus is on "whether the child appreciated the quality of his or her acts at the time the act was committed," rather than whether the child understood the legal consequences of the act. *State v. T.E.H.*, 91 Wn. App. 908, 913, 960 P.2d 441 (1998).

■ We have identified seven factors to consider in determining capacity: (1) the nature of the crime, (2) the child's age and maturity, (3) whether the child evidenced a desire for secrecy, (4) whether the child told the victim (if any) not to tell, (5) prior conduct similar to that charged, (6) any consequences that attached to that prior conduct, and (7)

whether the child had made an acknowledgment that the behavior is wrong and could lead to detention. *J.P.S.*, 135 Wn.2d at 38-39. "Also relevant is testimony from those acquainted with the child and the testimony of experts." *J.P.S.*, 135 Wn.2d at 39.

■ Capacity requires the actor to understand the nature or illegality of his acts. 43 C.J.S. *Infants* § 197 (1978). In other words, he must be able to entertain criminal intent. *Id.* A "sense of moral guilt alone, in the absence of knowledge of legal responsibility, is not sufficient," although actual knowledge of the legal consequences is not necessary. *Id.*

■ Washington courts have held that when a juvenile is charged with a sex crime, the State carries a greater burden of proving capacity, and must present a higher degree of proof that the child understood the illegality of the act. *J.P.S.*, 135 Wn.2d at 38 ("When a child is accused of a crime which involves sexual misconduct, it is more difficult for the State to prove the child understood the conduct was wrong."); 13B Seth A. Fine & Douglas J. Ende, Washington Practice: Criminal Law § 2415, at 63 (2d ed. 1998).

## Application to Ramer

Because the superior court found, consistent with the statutory presumption, that Ramer lacked capacity, we review this record to determine whether there was evidence from which a rational trier of fact could find Ramer incapable of first degree rape of a child. We do not substitute our judgment for that of the superior court's. While reasonable minds might differ over conflicting evidence, we will reverse the superior court only if, based upon the record, no rational trier of fact could reach the conclusion that the State failed to meet its burden.

In *J.P.S.*, this court noted that the nature of the crime is an important factor, but with sexual crimes it is very difficult to tell if a child understands the prohibitions on sexual behavior with other children. *J.P.S.*, 135 Wn.2d at

38. In *J.P.S.*, the eleven year old, mildly retarded defendant was charged with first degree rape of a three year old. *Id.* at 36. The defendant took the younger child to a shed, sent the other children away, pulled down both their pants, and then touched the three year old on the vagina. *Id.* at 39-40. The defendant lied about what contact had occurred but did not admonish the victim not to tell. *Id.* at 40. After talking with the police, the defendant admitted that the conduct was "bad." *Id.* This court unanimously concluded that the State had failed to establish by clear and convincing evidence that the defendant understood that his conduct was wrong. *Id.* at 44.

We conclude that there is sufficient evidence in the record to support the superior court's finding in this case that the State failed to establish by clear and convincing evidence that Ramer understood that his conduct was wrong. Four witnesses testified at the capacity hearing. Detective Reinhold did not express an opinion as to Ramer's capacity, and her testimony was equivocal, quoting Ramer as saying his conduct was "kind of sort of wrong." CP at 25. Dr. Trowbridge, who evaluated Ramer for the defense, opined that Ramer did not have the capacity to commit the crime charged. Dr. Trowbridge was further of the opinion that Ramer did not understand that sex with someone who consents and likes the sex is wrong.[10] Cain, who performed Ramer's "safe to be at large" evaluation for Thurston

---

[10] While the Court of Appeals correctly noted "that capacity does not require an understanding of the legal consequences of the conduct," it mischaracterized Dr. Trowbridge's testimony as "mistakenly focused on [Ramer's] lack of understanding about the legal consequences of the conduct." *State v. Ramer*, noted at 112 Wn. App. 1006, slip op. at 7 (2002). Dr. Trowbridge opined that Ramer did not understand the act charged.

> It's true that the child doesn't have to know that it's legally wrong only that it's morally wrong. But he has to know what "it is". Here I'm understanding he doesn't understand what "it is".

CP at 51. He further opined that Ramer did not understand that the conduct was wrong if the other child enjoyed the contact and consented.

> [I]t seemed pretty clear [to] me from talking with [Ramer] that he had been confused about the issue of whether or not if the child enjoys it or likes it, the other child, that that somehow makes it so it's not wrong.

CP at 42-43.

County, also expressed the opinion that Ramer did not have the capacity to commit the crime charged. Nore, who did not evaluate Ramer, was the only witness to express the opinion that Ramer had the capacity to commit the crime of first degree rape of a child.[11] While Nore's testimony supports the State's contention, we conclude a rational trier of fact could find the State failed to meet its burden based upon Detective Reinhold's testimony and the expert opinions of Cain and Dr. Trowbridge.

## CONCLUSION

We find that there is sufficient evidence in the record to support the superior court's finding that the State failed to overcome the statutory presumption by clear and convincing evidence. We reverse the Court of Appeals.

ALEXANDER, C.J., and JOHNSON, SANDERS, IRELAND, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

MADSEN, J. (concurring) — Although I concur in the result, I write separately to emphasize that the majority has not announced a new standard for reviewing child capacity determinations but continues to adhere to the standard set

---

[11] The Court of Appeals notes that the evidence showed Ramer had engaged in this type of conduct on at least two prior occasions, law enforcement was contacted each time, and Ramer was subsequently told that sexual contact with anyone was wrong. *Ramer*, noted at 112 Wn.App. 1006, slip op. at 8. However, a careful review of the record reveals that the only reference to the two prior incidents was contained in Dr. Trowbridge's report. There is no evidence that the authorities contacted on the prior occasions were law enforcement. Nor is there any evidence that Ramer was offered counseling. The report specifically stated:

> [Ramer's] mother and Ms[.] Briscoe both state that the authorities were contacted on those occasions, but [Ramer] was not offered any type of sexual counseling, apparently at least partly because he was only seven or eight years old at the time. They remember telling [all the children] on those occasions that they were all too young to have sex, and that therefore sexual touching was inappropriate touching. They do not remember conveying the concept to [Ramer] that he was especially responsible since he was the oldest one; indeed, both Ms[.] Lawrence and Ms[.] Briscoe told me that they themselves had not understood that concept (that the oldest child is the one responsible) until the time of [Ramer's] arrest on the instant charges.

Suppl. Clerk's Papers, Ex. at 3.

forth in *State v. J.P.S.*, 135 Wn.2d 34, 954 P.2d 894 (1998) and *State v. Q.D.*, 102 Wn.2d 19, 685 P.2d 557 (1984).

Under RCW 9A.04.050, the State has the burden to rebut the presumption of incapacity by clear and convincing evidence. The standard on review is whether there was evidence from which a rational trier of fact could find capacity by clear and convincing evidence. *J.P.S.*, 135 Wn.2d at 37; *State v. K.R.L.*, 67 Wn. App. 721, 840 P.2d 210 (1992). If the trial court concludes that a child lacks capacity, the State must point to evidence in the record that establishes capacity by clear and convincing evidence in order to prevail on a claim that the trial court's finding is erroneous. *See Q.D.*, 102 Wn.2d at 21, 26, 27 (record contained clear and convincing evidence to rebut statutory presumption of incapacity).