# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50218-6-II |
| Respondent, | |
| v. | |
| JOHN VIET HUYNH, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — John Viet Huynh appeals his jury trial convictions for residential burglary and theft of a motor vehicle. He argues that (1) the evidence was insufficient to support the residential burglary conviction because there was only evidence of possession of stolen property, (2) the trial court erred by allowing the jail to place him in a leg restraint during trial, and (3) defense counsel provided ineffective assistance of counsel by failing to object to the law enforcement officer's testimony that commented on Huynh's exercise of his right to silence. We affirm.

## FACTS

### I. BACKGROUND

Shortly before midnight on September 16, 2016, Mark Morgan's new truck was stolen from his attached garage. The truck keys, which had been hung next to the garage door, were also missing. When the truck was stolen, the garage door had been open and the garage lights had been

on because Morgan's son was packing a car in the driveway for a trip. Morgan estimated that the truck had probably been unattended for about 20 to 25 minutes before it was discovered missing.

As soon as Morgan and his son discovered that the truck was missing, Morgan began tracking the truck via its electronic global positioning system (GPS) tracking device and his son called the police. At about 12:20 AM, using the GPS tracking information provided by Morgan, City of Lacey Police Sergeant Kevin Landwehrle attempted to locate the truck in a residential area about five to six minutes from Morgan's residence.

As the officers drove towards the area in their marked patrol vehicle, the stolen truck accelerated past them into a dead end road. The officers turned around and drove toward the truck. As the officers approached, they saw two men flee the truck in opposite directions. A K-9 unit eventually tracked down Brandon Chinvadong hiding in a nearby backyard. At the time of his arrest, Chinvadong possessed headphones that belonged to Morgan and was wearing a pair of Morgan's son's shoes.

Sergeant Landwehrle then found Huynh in a nearby backyard, and City of Lacey Police Officers Joshua Dumont and Russell Mize took Huynh into custody. Huynh was wearing dark clothing and socks, but no shoes. A piece of broken string was attached to his belt.

The officers also found a bag belonging to Morgan near where Huynh was found. The bag contained various items belonging to Morgan, some shaved keys, and Huynh's shoes were sitting next to the bag. When Huynh was searched, the officers found flashlights, headphones, and a USB cable. Morgan later identified most of these items, not including the shaved keys and Huynh's shoes, as his or his son's property.

2

On the truck's passenger seat, Officer Dumont found "a piece of broken ceramic from a spark plug tied to a string." 1 Verbatim Report of Proceedings (VRP) at 132. The string in the truck matched the broken string that was attached to Huynh's belt loop. Someone had also cut some wires related to the GPS system, apparently in an attempt to disable the device.

After Officer Dumont advised Huynh of his *Miranda*[1] rights, Huynh waived his rights and told Officer Dumont that he had been the passenger in the truck and that Chinvadong had been the driver. Huynh also told Officer Dumont that (1) he (Huynh) ran from the vehicle because "he was just following his friend," and (2) Chinvadong had picked him up at 300 Lanyard Drive. 1 RP at 127. Officer Dumont tried to contact someone at this address to verify Huynh's story, but he was unable to do so because no one answered the door.

## II. PROCEDURE

The State charged Huynh with residential burglary and theft of a motor vehicle. The State charged him as both principal and accomplice as to both offenses. After the trial court ruled that Huynh's statements to Officer Dumont were admissible, the case proceeded to a jury trial.

### A. RESTRAINT HEARING

On the day of trial, the State requested that the trial court allow Huynh to be restrained during the trial with a leg restraint. The trial court held a hearing on the matter.

The State presented evidence that (1) Huynh had attempted to flee the officers who arrested him for his current offenses, (2) there were pending charges against Huynh in King County for attempted eluding and possession of a stolen vehicle, and (3) bail had been set at $10,000 cash or

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

bond in this case and at $5,000 in King County. The State also presented evidence that Huynh had numerous past felony convictions, including convictions for unlawful firearm possession, attempted eluding, and escape. Some of these convictions were more than ten years old. In addition, the State presented evidence that although Huynh's custody level was currently minimum security, his custody level had previously been elevated to high security after he twice refused to be transferred to a facility in a different county. Huynh received disciplinary infractions for these refusals and received an additional infraction for participating in prohibited financial activities in the jail.

The State also presented evidence that the proposed leg restraint was the least restrictive restraint available and provided detailed information about how the restraint was worn and used. The State noted that at the time of the hearing, the restraint, which is worn underneath the defendant's clothing, was more visible than it usually was. But the State asserted that the brace could be refitted to make it less obvious and that Huynh could be seated in a way that ensured the jury could not see it by merely switching places with defense counsel.

After considering (1) the current charges, (2) Huynh's physical attributes, (3) Huynh's past criminal record, (4) whether there were any known plans to disrupt the proceedings or escape, (5) the court's security plans, and (6) the effect of the leg restraint, the trial court ruled that Huynh would wear the leg restraint during trial. But the trial court required that Huynh change places with defense counsel to block the jury's view and that the portion of the leg restraint near his ankle not be visible. The State also noted that it would have the jail refit the leg restraint to make it less noticeable. Before jury selection, defense counsel acknowledged that the leg restraint had been adjusted so that it was less noticeable.

B. TRIAL

At trial, Sergeant Landwehrle, Officer Mize, Officer Dumont, and Morgan testified for the State as described above. Huynh did not present any witnesses.

After Sergeant Landwehrle testified about locating Huynh, the State asked him if Huynh had made any statements after being taken into custody. Sergeant Landwehrle testified:

> Yes. He was seated in handcuffs in the back of a Lacey police vehicle. My understanding is *he wasn't providing information to [Officer] Dumont*. [Officer] Dumont did an initial interview with him. So I went over and encouraged him to cooperate and to be honest with [Officer] Dumont. That was the only bit of conversation I had with him. It was very brief.

1 VRP at 82 (emphasis added). Defense counsel did not object to the State's question or Sergeant Landwehrle's response.

Sergeant Landwehrle also testified that the porcelain portion of a spark plug can be used to break tempered glass. He further testified that spark plugs and shaved keys are frequently used in auto thefts and vehicle prowls. Morgan testified that he did not know Chinvadong or Huynh and that he did not give them permission to take his truck.

In its closing argument, the State did not mention that Huynh initially refused to talk to Officer Dumont. Instead, the State discussed the statement Huynh did make. The State also emphasized that Huynh had been charged as either a principle or accomplice and that the jury could find him guilty of residential burglary even if he did not enter the garage as long as it found that he was an accomplice to the burglary. The State suggested that, at a minimum, the jury could conclude that Huynh was involved in the burglary because he possessed the tools needed to steal a vehicle, even though he did not have to use those tools, and because he was wearing dark clothing.

5

The jury found Huynh guilty of residential burglary and theft of a motor vehicle. Huynh appeals.

ANALYSIS

Huynh argues that (1) the evidence was insufficient to support the residential burglary conviction, (2) the trial court erred by allowing the use of the leg restraint, and (3) defense counsel provided ineffective assistance of counsel by failing to object to Sergeant Landwehrle's testimony that commented on Huynh's exercise of his right to silence. These arguments fail.

I. SUFFICIENCY OF THE EVIDENCE

Huynh first argues that the State failed to present sufficient evidence that he committed the burglary.[2] We disagree.

A. LEGAL PRINCIPLES

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010). The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 2825 (2003)). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *Drum*, 168 Wn.2d at 35, 225 P.3d 237 (2010) (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

---

[2] Huynh does not argue that the evidence was insufficient to support the theft of a motor vehicle charge.

"It is well settled law in Washington that proof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary." *State v. Mace*, 97 Wn.2d 840, 843, 650 P.2d 217 (1982); *see also State v. Q.D.*, 102 Wn.2d 19, 28, 685 P.2d 557 (1984). "It is, however, also well established that proof of such possession, if accompanied by 'indicatory evidence on collateral matters,' will support a burglary conviction." *Mace*, 97 Wn.2d at 843 (quoting *State v. Garske*, 74 Wn. App. 901, 903, 447 P.2d 167 (1968)). Only "'slight corroborative evidence of other inculpatory circumstances tending to show his guilty will support a conviction.'" *Mace*, 97 Wn.2d at 843 (quoting *State v. Portee*, 25 Wn.2d 246, 254, 170 P.2d 326 (1946)); *see also State v. Gonzales*, 46 Wn. App. 388, 402, 731 P.2d 1101 (1986) ("even slight collateral and corroborative evidence of guilt" is sufficient). Such corroborative evidence may include evidence such as flight, proximity of the defendant to the crime scene, or a false or improbable explanation of his possession of the stolen property. *Mace*, 97 Wn.2d at 843.

B. POSSESSION OF STOLEN PROPERTY AS TO THE BURGLARY CHARGE

Huynh contends that the possession of stolen property related to the burglary is not sufficient to support the burglary charge because there was no other corroborating evidence establishing his participation in the burglary. The State responds that there was sufficient corroborating evidence that Huynh participated in the burglary as either a principle or accomplice. We agree with the State.

Huynh argues that this case is like *Mace* and *Q.D.* In *Mace*, our Supreme Court held that the evidence was insufficient to support a burglary conviction when the burglary occurred in Richland, Washington and the only evidence was the defendant's fingerprints on receipts from a bank machine transaction that was made using a stolen bank card in Kennewick. 97 Wn.2d at 841-

43. The court held that this evidence demonstrated only that the defendant had possessed the bank card shortly after the burglary, not that he had entered the premises. *Mace*, 97 Wn.2d at 842-43, 845.

In *Q.D.*, our Supreme Court applied *Mace* in the context of a first degree trespass case. 102 Wn.2d at 28. The defendant was charged with first degree trespass after it was discovered that a burglar alarm key was missing from an unlocked school office, and Q.D. was later found on school grounds in possession of the key. *Q.D.*, 102 Wn.2d at 21-22. The key had last been seen several hours before on a desk in an unlocked office. *Q.D.*, 102 Wn.2d at 28. Because there was no evidence that the defendant had been near the office when the key disappeared and there was no other evidence corroborative of guilt in addition to his possession of the stolen key, our Supreme Court reversed the trespass conviction. *Q.D.*, 102 Wn.2d at 28.

The State argues that this case is more like *Garske*. In *Garske*, the police stopped and questioned Garske a short distance from a burglarized jewelry store around midnight. 74 Wn.2d at 902. The burglary was not discovered until 8:00 AM the next morning. *Garske*, 74 Wn.2d at 902. Some of the jewelry taken in the burglary was discovered near where the police had questioned Garske. *Garske*, 74 Wn.2d at 902. Officers later found several items taken from the store in and around the home in which Garske had been staying. *Garske*, 74 Wn.2d at 902. Garske argued that the evidence was insufficient to support the burglary charge because all the State had established was that he possessed some of the stolen property. *Garske*, 74 Wn.2d at 903. Our Supreme Court held that there was sufficient corroborative evidence to support the burglary conviction because Garske had been near the scene of the crime, he had no explanation for his possession of the stolen property, he was not surprised when the stolen property was discovered,

and he had a grease stain on his pants comparable to the grease on the store's counter. *Garske*, 74 Wn.2d at 903.

The evidence in this case is not as strong as that in *Garkse*. In *Garske*, the grease on the defendant's pants was comparable to grease inside the burglarized store. 74 Wn.2d at 903. Here, we lack evidence linking Huynh to anything from the inside of Morgan's garage. But this case has significantly more evidence corroborative of a burglary than there was in *Mace* or *Q.D.* In those cases, all that was present was possession of the property or possession of the property and presence in the area hours after the offense was committed. *Mace*, 97 Wn.2d at 845, *Q.D.*, 102 Wn.2d at 28. There was no additional evidence linking the defendants to the burglary or trespass.

Although the corroborative evidence here is not as strong as in *Garske*, it is stronger than that in *Mace* and *Q.D.* Not only was Huynh in possession of property taken during the burglary, he was found in the area of the burglary near the time of the burglary, he possessed tools that could be used in a vehicle theft and a vehicle was stolen during the burglary, he was wearing dark clothing that could facilitate a burglary, and he attempted to flee. Although this evidence is not direct evidence that Huynh entered the premises, it could easily be construed as his having been present and prepared to assist with the theft of the truck if the key had not been so readily available. All that is required is additional corroborating evidence, even if slight, that tended to show Huynh's guilt. *Mace*, 97 Wn.2d at 843. The additional evidence here is sufficient to meet that requirement. Accordingly, Huynh's sufficiency argument fails.

## II. RESTRAINT ISSUE

Huynh next argues that the trial court erred by requiring him to wear a leg restraint during trial without making the required findings of fact and that this error denied him his right to a fair

trial. He contends that the trial court was required to make a finding that there was particularized suspicion that Huynh would disrupt the proceedings, harm someone, or attempt to escape and that the trial court's reliance on his old convictions to make this finding was improper. Because Huynh fails to show that the jury could see the restraints, this argument fails.

Even presuming, but not deciding, that the trial court, after making the required findings of fact, abused its discretion by allowing the leg restraint, "[a] claim of unconstitutional shackling is subject to harmless error analysis." *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). "In order to succeed on his claim, the [appellant] must show the shackling had a substantial or injurious effect or influence on the jury's verdict."[3] *Hutchinson*, 135 Wn.2d at 888. "This requires evidence that the jury saw the restraints or that the restraints substantially impaired the [appellant's] ability to assist in his trial defense." *State v. Monschke*, 133 Wn. App. 313, 336, 135 P.3d 966 (2006).

Here, Huynh does not contend that the jury could have seen the restraints or that the restraints impaired his ability to assist in his defense. Nor is there any evidence in the record that the jury saw or could have seen the restraints during trial or that his ability to assist in his defense was impaired. In fact, Huynh's restraint was refitted so it was not visible to the jury and the trial court required that Huynh sit where there was no possibility that the jury could see the restraint.

---

[3] We note that Huynh cites *State v. Damon*, 144 Wn.2d 686, 692, 25 P.3d 418 (2001), for his assertion that it is the State's burden to prove any error was harmless beyond a reasonable doubt. But the portion of *Damon* stating that it is the State's burden to prove the error was harmless beyond a reasonable doubt addresses the standard that applies after the defendant first establishes that the jury could have observed the restraints. *Damon*, 144 Wn.2d at 693. Notably, the *Damon* court applies the burden from *Hutchinson* when it analyzes whether the appellant had first carried his burden of establishing that the jury had seen the restraints. *Damon*, 144 Wn.2d at 692-93.

There is nothing in the record suggesting that the trial court's requirements were not met. In addition, there is no evidence that the restraint substantially impaired his ability to assist in his trial defense. Thus, we conclude any potential error was harmless and this argument fails.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Finally, Huynh argues that defense counsel provided ineffective assistance of counsel when he failed to challenge the following testimony by Sergeant Landwehrle's:

> [Huynh] was seated in handcuffs in the back of a Lacey police vehicle. My understanding is *he wasn't providing information to [Officer] Dumont*. [Officer] Dumont did an initial interview with him. So *I went over and encouraged him to cooperate and to be honest with [Officer] Dumont*. That was the only bit of conversation I had with him. It was very brief.

1 VRP at 82 (emphasis added), Br. of Appellant at 21. Huynh argues that this testimony was an improper comment on his assertion of his right to silence.[4] This argument fails.

### A. STANDARD OF REVIEW

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334-35. Our scrutiny of counsel's

---

[4] Although Huynh twice mentions that this same testimony touched on his truthfulness, he presents no argument related to this issue. Accordingly, to the extent Huynh is trying to argue that the testimony was a comment on his veracity, we do not address that issue because it was not adequately briefed. *State v. Sims*, 171 Wn. 2d 436, 441, 256 P.3d 285 (2011) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)).

performance is highly deferential; there is a strong presumption of reasonableness. *McFarland*, 127 Wn.2d at 335.

When a defendant bases his ineffective assistance of counsel claim on counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011). If a defendant fails to establish either deficiency or prejudice, the ineffective assistance of counsel claim fails. *Strickland*, 466 U.S. at 687.

B. RIGHT TO SILENCE

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington State Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." The State may not use a defendant's silence "as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

Sergeant Landwehrle's testimony was a direct comment on Huynh's exercise of his right to silence. *State v. Pottorff*, 138 Wn. App. 343, 346, 156 P.3d 955 (2007) ("A direct comment occurs when a witness or state agent makes reference to the defendant's invocation of his or her right to remain silent."). If defense counsel had objected to this testimony, it is probable that the trial court would have sustained the objection.

But Huynh fails to establish that defense counsel's failure to object to this testimony was prejudicial. The record shows that the State did not attempt to use this testimony as evidence of guilt. Instead, the State presented evidence that Huynh eventually waived his *Miranda* rights and gave a statement to Officer Dumont. Thus, Huynh does not establish ineffective assistance of counsel on this ground because he fails to show a reasonable probability that the outcome of the trial would have differed absent defense counsel's failure to object to the Sergeant's testimony. Accordingly, Huynh fails to establish ineffective assistance of counsel.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

JOHANSON, J.