IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Appellant,

v.

JONATHAN CRUZ,

Respondent.

No. 86263-4-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Based on his alleged actions as an 11-year-old, the State charged Jonathan Cruz as an adult with rape of a child in the first degree. The trial court dismissed the charge after concluding the State failed to meet its burden in a capacity hearing. Because the court did not apply the correct legal standard, we reverse and remand for further proceedings.

FACTS

In 2023, the State charged Cruz with rape of a child in the first degree for acts he allegedly committed in 2016 against J.Z., who was then 5 years old.[1] The trial court held a capacity hearing. At the hearing the court admitted the State's evidence which consisted of a video recording of a 2022 forensic interview of J.Z., a supplemental

---

[1] Although J.Z.'s date of birth is not in the record, the parties do not dispute that J.Z. would have been five at the time of the alleged rape. See Exhibit 2 which includes a police report stating that J.Z. said the incident happened right before his family moved from the apartment complex in 2016 where Cruz also lived and where the rape occurred.

report from the investigating detective, and Cruz's school disciplinary records from 2015 to 2022.[2] Neither party presented any expert witnesses or live testimony.

According to J.Z., in early 2016, as children, Cruz and J.Z. lived in the same apartment complex. According to J.Z., one day, sometime between January 1 and March 1 of that year, the two children were outside playing with a toy gun together, while J.Z.'s mother was preparing to move out of her apartment. Cruz then invited J.Z. into his apartment to play Xbox, to which J.Z. agreed. Once the pair entered Cruz's apartment, Cruz locked the door behind them. Cruz and J.Z. were alone in the apartment. Cruz and J.Z. entered a bedroom, where Cruz forcibly put J.Z. facedown on a bed, pulled J.Z.'s pants down, and inserted his penis into J.Z.'s buttocks. Cruz then grabbed J.Z., pushed him down and inserted his penis into J.Z.'s mouth. Cruz then put his hands on J.Z.'s head and moved his head back and forth, forcing J.Z. to perform oral sex. After the incident occurred, Cruz told J.Z. "If you tell anyone, I'll hurt you and your family." J.Z. responded "Okay." The two then exited the apartment and continued to play outside.

In a forensic interview conducted in August 2022, J.Z. said that while recently playing Xbox he remembered what had happened with Cruz in 2016. The next night when J.Z. and his mother went to pick up pizza, J.Z. saw Cruz there and told his mom he did not want to go inside to pick up the food. J.Z. later told his mother what had happened in 2016 with Cruz. J.Z. and his family confronted Cruz with his family. Cruz denied the allegations. J.Z. and his family then reported the incident to police.

---

[2] Three and a half pages of the school records were completely redacted.

A few days later, a detective interviewed Cruz. According to the detective's supplemental narrative, when asked about the incident with J.Z., Cruz said that the only time J.Z. was ever in their apartment was when Cruz's mother was babysitting J.Z. Cruz denied any wrongdoing, asserting that the only time he had touched J.Z. physically was when they pretended to wrestle like "WWE"[3] as seen on TV.

In January 2023, the State charged Cruz with rape of a child in the first degree. Following a capacity hearing, the court heard argument at a follow-up hearing and issued its ruling. The court's ruling centered on its interpretation of State v. Ramer, 151 Wn.2d 106, 86 P.3d 132 (2004). The court stated that

> [b]ased upon a pre-Ramer understanding of the law, the Court would have concluded that Mr. Cruz was capable or had capacity given the defendant's age and the Court's findings that he understood the nature of the acts and understood that they were not just wrong, but quite wrong.

However, the court clarified that Ramer established a higher standard. The court ruled that under RCW 9A.04.050, Cruz was not capable of committing the offense charged because the court could not "find by clear and convincing evidence that Mr. Cruz understood that his actions were illegal and could result in detention or legal consequences." The court dismissed the charges without prejudice.

The State appeals.

## DISCUSSION

When the trial court finds a lack of capacity, we review the record to determine whether a rational trier of fact could find that the State failed to overcome the presumption that the child lacked capacity.[4] Id. at 113. A court necessarily abuses its

---

[3] WWE presumably stands for World Wrestling Entertainment.
[4] "When the superior court finds capacity, we review the record to determine whether there is substantial evidence establishing that the State met its burden of overcoming the

discretion if its decision is based on an erroneous view of the law. State v. Booth, 24

Wn. App. 2d 586, 600, 521 P.3d 196 (2022).

> Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong.

RCW 9A.04.050. Referred to as "the infancy defense," this presumption helps to

"'protect from the criminal justice system those individuals of tender years who are less

capable than adults of appreciating the wrongfulness of their behavior.'" Ramer, 151

Wn.2d at 114 (quoting State v. Q.D., 102 Wn.2d 19, 23, 685 P.2d 557 (1984)).

To successfully overcome the presumption of incapacity, the State must prove by

clear and convincing evidence that the child possessed sufficient capacity to understand

the act and know that it was wrong. State v. J.P.S., 135 Wn.2d 34, 38, 954 P.2d 894

(1998); Q.D., 102 Wn.2d at 21.

Establishing capacity is a separate inquiry from the specific mental element of

the charged crime. Q.D., 102 Wn.2d at 24. While there are similarities between the

capacity and the mental element of a specific criminal offense, capacity is not

considered an element of the charged offense. Id. Instead, it constitutes a general

determination that the juvenile understood the act and its wrongfulness. Id. Were

capacity an element of the crime, proof beyond a reasonable doubt would be required.

Id. But capacity, not being an element of the crime, does not require as stringent a

standard of proof. Id.

---

statutory presumption that children under 12 years of age are incapable of committing crime by clear and convincing evidence." Ramer, 151 Wn.2d at 112-13 (citing RCW 9A.04.050).

The State contends that the trial court misinterpreted <u>Ramer</u> as having created a more rigorous legal test to rebut the presumption of incapacity. The State argues that <u>Ramer</u> cited <u>J.P.S.</u>, which provides the proper legal test and that any additional language in <u>Ramer</u> is dicta. Cruz maintains that the court correctly required the State to prove that the child understood the illegality of the act committed.

We agree with Cruz that <u>Ramer</u> did further clarify the legal test by which the State must prove capacity. But Cruz, the State, and the trial court misread that legal test set forth in <u>Ramer</u>.

When determining capacity, Washington courts engage in a fact-specific inquiry that "must be in reference to the specific act charged." <u>Ramer</u>, 151 Wn.2d at 114. Washington courts have recognized that "[w]hen a child is accused of a crime which involves sexual misconduct, it is more difficult for the State to prove the child understood the conduct was wrong." <u>Id.</u> at 115. There are seven factors that may be relevant in determining whether a child knew the act committed was wrong:

> (1) the nature of the crime; (2) the child's age and maturity; (3) whether the child showed a desire for secrecy; (4) whether the child admonished the victim not to tell; (5) prior conduct similar to that charged; (6) any consequences that attached to the conduct; and (7) acknowledgment that the behavior was wrong and could lead to detention.

<u>J.P.S.</u>, 135 Wn.2d at 38-39. "A child's age, maturity, experience, and understanding may all be relevant in deciding if a given child had knowledge of the act's wrongfulness at the time it was committed." <u>Id.</u> at 39 "Also relevant is testimony from those acquainted with the child and the testimony of experts." <u>Id.</u>

The legal test is whether the child had knowledge of the wrongfulness of the act at the time the child committed the offense and not that the child realized it was wrong

after the fact. Id. at 37-38. The legal test for capacity "does not require that the child know the act was illegal or understand the legal consequences of the act." Id. at 38.

In 2004, the Washington State Supreme Court, in Ramer, continued to follow J.P.S. in every way, including stating that "[i]t is not necessary, however, for the child to understand that the act would be punishable under the law." Ramer, 151 Wn.2d at 114 (citing J.P.S., 135 Wn.2d at 38). However, the court also clarified what is required to overcome the presumption of incapacity. The Supreme Court stated:

> Capacity requires the actor to understand the nature or illegality of his acts. 43 C.J.S. Infants § 197 (1978). In other words, [the child] must be able to entertain criminal intent. Id. A "sense of moral guilt alone, in the absence of knowledge of legal responsibility, is not sufficient," although actual knowledge of the legal consequences is not necessary. Id.

Ramer, 151 Wn.2d at 115.[5]

The State argues that this quote from the C.J.S. Infants treatise should be considered dicta, particularly in light of the concurrence in Ramer that emphasized "that the majority has not announced a new standard for reviewing child capacity determinations but continues to adhere to the standard set forth in J.P.S., 135 Wn.2d 34 and Q.D., 102 Wn.2d 19." Ramer, 151 Wn.2d at 117-18 (Madsen, J. concurring). Justice Madsen concurred in result only. Id. But the concurrence only addressed the standard of review and did not address the legal test in determining capacity nor mention the citation to C.J.S. Infants. Regardless, eight justices signed the majority opinion, and no other justice joined the concurrence. Even if it could be argued that the concurrence suggests the citation to C.J.S. Infants is dicta, an opinion joined by fewer than a majority does not

---

[5] Subsequent editions of the C.J.S. no longer contain this language quoted in Ramer. However, the current version of the C.J.S. states that there may be a rebuttable presumption of incapacity for minors between the ages of 7 and 14. 43 C.J.S. Infants § 379.

establish precedent. <u>Fredrickson v. Bertolino's Tacoma, Inc.</u>, 131 Wn. App. 183, 193, 127 P.3d 5 (2005).

Nor could the language in <u>Ramer</u> be considered dicta. Statements in a case that are unrelated to an issue before the court and are unnecessary to decide the case constitute obiter dictum and need not be followed. <u>Johnson v. Liquor & Cannabis Bd.</u>, 197 Wn.2d 605, 618, 486 P.3d 125 (2021). In <u>Ramer</u>, the defendant admitted that the conduct was "bad" after talking with the police. 151 Wn.2d at 116. The investigating detective quoted Ramer as saying his conduct was "kind of sort of wrong." Two experts' opinions also concluded that Ramer did not have the capacity to commit the crime charged. Our Supreme Court quoted C.J.S. <u>Infants</u> immediately after listing the seven factors from <u>J.P.S.</u> in discussing the legal test for capacity. <u>Id.</u> at 114-15. The <u>Ramer</u> court's citation to C.J.S. could not reasonably be viewed as "unrelated" to an issue before the court. Accordingly, we agree with Cruz that <u>Ramer</u> is controlling authority.

Division Two recently recognized our Supreme Court's quotation in <u>Ramer</u> from 43 C.J.S. <u>Infants</u> § 197 (1978). <u>State v. K.A.B.</u>, 14 Wn. App. 2d 677, 697, 475 P.3d 216 (2020). Division Two read this new language to mean that the child "'<u>must be able to entertain criminal intent</u>.'" <u>Id.</u> at 697 (quoting <u>Ramer</u>, 151 Wn.2d at 114-15) (emphasis added). In other words, "a child must be shown to <u>have an ability</u> to form criminal intent." <u>Id.</u> at 698.

We, like Division Two, are required to follow <u>Ramer</u> and agree that the State must establish by clear and convincing evidence that the child had the <u>ability</u> to form criminal intent. "[T]here remains no requirement that the State show that the child understands the specific legal consequences they face for committing the act." <u>K.A.B.</u>,

7

14 Wn. App. at 697-98. Yet, in the instant case, the trial court dismissed the charge because it held the State did not meet its burden by establishing by clear and convincing evidence that Cruz "understood that his actions were illegal and could result in detention or legal consequences." This was a misapplication of the law.

The State also argues that general statutory interpretation proscribes this court from incorporating the additional requirement of proving the ability to entertain criminal intent when the legislature has chosen not to impose it. In general, we are bound to follow Washington Supreme Court precedent. 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 590, 146 P.3d 423 (2006). Moreover, Ramer was decided and has remained controlling authority since 2004. Since Ramer was published 20 years ago, legislature has made no attempt to amend RCW 9A.04.050 or clarify its legislative intent that is contrary to the holding in Ramer. This court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision. City of Federal Way v. Koenig, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009). "If the legislature does not register its disapproval of a court opinion, at some point that silence itself is evidence of legislative approval." In re Custody of A.F.J., 179 Wn.2d 179, 186, 314 P.3d 373 (2013) (quoting 1000 Friends of Wash. v. McFarland, 159 Wn.2d 165, 181, 149 P.3d 616 (2006)).

Because the trial court did not apply the correct legal standard in the instant case, we reverse and remand for further proceedings. Given the lack of any live testimony, including expert testimony, at the first hearing where the court and parties

misread <u>Ramer</u>, we further note that the trial court is not restricted from considering additional evidence at a new capacity hearing.

Even setting aside the court's misreading of <u>Ramer</u>, Cruz asks this court to affirm the dismissal because the State presented a thin evidentiary record that still lacks clear and convincing evidence that Cruz had capacity. But this court does not determine the issue of capacity in the first instance. <u>See</u> <u>Ramer</u>, 151 Wn.2d at 112-13 (holding that when the superior court finds capacity, appellate courts review the record to determine whether there is substantial evidence establishing that the State met its burden of overcoming the statutory presumption that children under 12 years of age are incapable of committing crime by clear and convincing evidence). Though the trial court found the State met its burden under the "pre-<u>Ramer</u>" standard, that determination also was based on a misapplication of the law in failing to recognize and apply the legal test as articulated in <u>Ramer</u>.

We reverse and remand for the court to reconsider capacity under the correct legal standard. Because the court and parties misunderstood this standard previously, we note that the trial court is not limited from considering additional evidence.

_____
Coburn, J.

WE CONCUR:

_____
Chung, J.

_____
Mann, J.