**FILED**
**NOVEMBER 8, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 38145-5-III |
| | ) | |
| E. O.-D.† | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

STAAB, J. — A criminal investigation established the presence of child

pornography materials in the home of C.O. (Father) and M.T. (Mother). Three children

were removed by child protective services (CPS) when police searched the home. While

denying the allegations, the Father stipulated to an agreed order of dependency providing

for supervised visitation. When law enforcement suspended the investigation and failed

to file criminal charges due to a lack of corpus evidence, the Father moved the court for

unsupervised visitation. A court commissioner denied the motion. On revision, the

---

† To protect the privacy interests of the minor children, we use their initials
throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title*
(Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018),
http://www.courts.wa.gov/appellate_trial_courts.

superior court affirmed denial, noting that the criminal investigation was suspended, not closed. The court also found "credible evidence of law enforcement exchanging child porn with an [internet protocol] IP address associated with [Father], a thumb-drive with child porn was found in his home, and his son, M.O., had pornography on his school computer." Clerk's Papers (CP) at 739.

The Father appeals, arguing that the superior court abused its discretion because suspension of the investigation and the failure to file criminal charges is a change in circumstances warranting unsupervised visitation. We granted discretionary review and reverse. The identified harm of unsupervised visits with the Father—that the Father will expose the child to child pornography—is based on the unproven allegation that the Father was the source of the illicit materials downloaded and found in the home. To date, no court has found, nor has it been proved by any standard of proof, that the Father possessed child pornography. Instead, there is suspicion and speculation based on unproven evidence. The fact that the Father is a suspect, without more, is insufficient to deny him unsupervised visitation indefinitely. While legitimate, the additional concerns raised by the Department of Children, Youth, and Families (Department) have either been resolved or, like the criminal charges, have not been proven to be the product of the Father's conduct.

No. 38145-5-III
*In re Dependency of E.O.-D.*

BACKGROUND

The following facts are taken from the record before the commissioner and the trial court judge's memorandum decision[1] The Father has three children: K.O. (age 5), M.O. (age 12), and E.O.-D. (age 15). M.T. is the mother of K.O. The older children have a different mother.

In January 2020, law enforcement revealed that an IP address from the parent's home had been exchanging child pornography with the FBI for three years. The revelation came when local law enforcement served a search warrant on the Father's residence and removed the children from the home. Local law enforcement discovered a thumb drive with child pornography in the garage during their search. Law enforcement also seized the Father's iPhone but could not access it. After police seized the iPhone, Apple put a lockout on it.

The children were removed from the home following the search, and the Department initiated dependencies for each child. The petitions alleged that:

> the children are at risk of further neglect and abuse due to the
> family's ongoing chaotic lifestyle; including, but not limited to a
> registered sex offender residing in the home and the father's criminal
> investigation for child pornography. The children are also at risk due to

[1] The record contains additional evidence that was filed after the commissioner issued her decision. Since this evidence was not available to the commissioner, we do not consider it on appeal.

3

the parents untreated mental health issues and untreated chemical
dependency issues.

CP at 3. The petitions went on to allege that the Father was being criminally investigated

for a severe case of child pornography, there was a registered sex offender living in the

home, and the Father has a history of abuse, founded and unfounded. The Department

noted a prior dependency in 2016, including allegations that the Father was sexually

abusing his oldest child. This dependency was dismissed when the child recanted the

allegations.

In April 2020, the Father stipulated to an order of dependency and disposition. By

doing so, the Father waived his right to challenge the finding of dependency. His

stipulation provided:

> While the child's father does not agree with all the factual allegations
> contained in the Department's original petition filed January 28, 2020, he
> does agree that if this matter were to proceed to trial the Department
> would be able to establish a sufficient factual basis by the requisite
> degree of proof to support a finding of (c) dependency. The father
> further agrees that a hearing would identify parenting deficiencies that
> are properly and adequately addressed by the services set forth in the
> disposition order, below. The following deficiencies have been
> identified: pending criminal investigation and untreated mental health.

CP at 190 (boldface omitted). A "(c)" dependency refers to the finding made under RCW

13.34.030(6)(c) that a child is dependent if they have "no parent . . . capable of adequately

4

caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

The court found that no parent was available to parent the children pursuant to RCW 13.34.060(6)(c).  Within the order on disposition, the Father agreed that the children would remain in foster care with a relative placement, and he would have supervised visits twice a week.  In addition, the Father agreed to participate in random drug and alcohol testing, complete a parenting assessment and a parenting program, complete mental health treatment and, if recommended by his mental health provider, psychological treatment.

While law enforcement suspects that the Father is the person who had been exchanging child pornography for the past three years, it could not rule out the other adults living in the home.  At the time of the search, three other adults lived in the house with the Father and the children.  The first was the Father's long-term girlfriend, M.T., who is the mother of the youngest child K.O.  M.T.'s mother and her father, a convicted sex offender with an active warrant out of California for failure to register as a sex offender, were also living in the home.

M.T. later told detectives that she watches pornography.  And that she watches it alone, not with the Father.  When asked what pornography she would search for, she

stated "she always thought the concept of a 'stepdad and stepdaughter' was kind of interesting to her, but clarified that it was when the stepdaughter was eighteen." CP at 810. She also told the detective that her parents "know nothing about the internet" and were not living there when the investigation began. CP at 809. The Mother's only identified parenting deficiencies were associating with the Father and leaving the children in the care of her father, a registered sex offender.

While he admitted to searching for adult pornography, the Father did not admit to being interested in child pornography or parent-child scenarios. The Father also has a history of CPS contacts, including sexually perpetrating on his sister and unfounded 2016 allegations of sexual abuse of his oldest child, E.O.-D.

In late April, the youngest child was returned to his mother, and the other children remained with relatives. Around the same time, the middle child, M.O., was moved from one relative to another placement because he was observed accessing incestuous pornography with his school computer. During her forensic interview, the oldest child, E.O.-D. disclosed that she saw her Father look at pornography on pornhub.com.

Meanwhile, the Father has never been arrested, and charges have not been filed. The FBI did not keep the case, even though the investigation originated with them, but instead turned the case over to local law enforcement. Local law enforcement put the

6

investigation on "indefinite hold" and did not forward charges to the prosecutor's office.

Eventually, the lead detective on the case told the guardian ad litem (GAL) that no

criminal charges will be filed against the Father "due to insufficient evidence."

CP at 407. At a subsequent hearing, the detective testified that the investigation was "on

hold" rather than closed. CP at 429. According to the detective, the investigation could

not proceed because of the locked iPhone.

In September 2020, the Father filed a motion for unsupervised visitation with his

children. The Father argued that a change in circumstances justified the change in

visitation. Specifically, the Father asserted that he had been making progress in his

mental health treatment and family therapy. After eight months with no charges filed, he

believed the investigation was no longer a basis for finding him unfit to parent. The

Father did not challenge the underlying dependency order and stipulations. He attached

Department policy 4254 on visitation determinations and a one-page email from James

Johnston of Family Counseling Northwest stating, "I have NO safety concerns regarding

[the Father] being around his children." CP at 360, 363. The email is unsworn and

unauthenticated. No report or qualifications from Mr. Johnston were provided.

The Department opposed the motion. Social worker Elizabeth Zumbahl filed a

declaration indicating that the Father "engaged in family therapy, demonstrates insight

7

into his past parenting practices, and approach to parenting but he continues to deny any issues with looking at pornography or possessing/distributing child pornography" despite his past history. CP at 392-93. She indicated that the criminal investigation remained pending. No therapist reports were attached.

The superior court commissioner denied the Father's motion. Concerning the pending criminal investigation, the commissioner found:

> At the motion hearing on October 21, 2020, Detective Amy Ross testified that the pending criminal investigation against [the Father] is on hold. Detective Ross explained that after [the Father] turned his iPhone over to the police, he reported it stolen. His report of his stolen phone caused Apple to lock down his phone and any information contained on the phone is now inaccessible. Detective Ross also testified that the FBI had been communicating and exchanging child pornography with an IP address associated with [the Father] and [the Mother's] home for a period of three years. In addition, a thumb drive with child pornography was discovered in [their] home.

CP at 429.

While recognizing that no court had determined whether the allegations from the criminal investigation had a basis in fact, the commissioner held that it could not "ignore the agree[d] link between the criminal investigation and the removal of the children from [the Father's] care." CP at 430. The court ordered the parties to devise a "service plan" "to address the nexus between the pending criminal investigation and [the Father's]

8

inability to parent." CP at 430. The Department wanted the Father to undergo a psychosexual evaluation but he declined.

After the parties failed to reach an agreement on a plan, the Father renoted his motion. The commissioner again denied the Father's motion and ordered the parties to again work together to discuss additional options to address the Father's safety risk. The court did not order the Father to do a psychosexual evaluation but also noted:

> [I]t cannot go unacknowledged that but for the criminal investigation related to child pornography a dependency may not have ever occurred. It is absurd that this court would now ignore the agreed safety risk and the acknowledgement from [the Father] that the criminal investigation related to child pornography resulted in there being "no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

CP at 466.

The Father moved to revise the commissioner's ruling. The Department again opposed the motion. The superior court judge denied the Father's motion, finding:

> [H]e did not and has not undertaken service[s] to eliminate the risk of the children being exposed to child pornography or other physical or mental harm secondary to the specter of him using child pornography. No therapist has provided a foundation for having taken a history and undergoing necessary tests and evaluations for assessment of child pornography risks with [the Father]. There is no testimony from any expert saying s/he is qualified to make this assessment.
>
> . . . .

9

> So far, he has not proposed a method to rule out the specter of exposure to child pornography.

CP at 737-38.

The Father moved for discretionary review in this court. The commissioner denied review, finding that the exchange of child pornography with the FBI, the thumb drive, and the middle child's use of pornography were "tenable grounds for concluding that supervised visits were necessary to protect the children at this time." Comm'r Ruling, *In re Dependency of E.O.D.* No. 38145-5-III, at 9 (Wash. Ct. App. Sept. 21, 2021). A panel of this court granted the Father's motion to modify the commissioner's ruling and granted discretionary review.

While the appeal was pending, the superior court dismissed the dependencies of the two youngest children, K.O. and M.O. While only the dependency of E.O.-D. remains, we assume that the evidence of M.O. accessing pornography raises generalized concern applicable to E.O.-D. as well as concerns specific to M.O.

ANALYSIS

The sole question presented is whether the trial court abused its discretion by denying the Father's motion for unsupervised visitation during the child dependency

based on pending criminal charges that will not be filed unless additional evidence is discovered.

Although the Father's motion was first decided by a superior court commissioner, we review the superior court's decision on revision. A motion to modify visitation first heard by a commissioner may be revised by the trial court judge de novo. RCW 2.24.050; *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). The trial court judge considers only the record before the commissioner and the findings of fact and conclusions of law entered by the commissioner. *Id.* On appeal, "[w]e review the superior court's ruling, not the commissioner's." *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). Where the trial court judge reviewed the record before the commissioner, we also limit our review to the record before the commissioner. The evidence is substantially the same in this case.

"Trial courts have broad discretion in matters dealing with children's welfare." *In re Dependency of Tyler L.*, 150 Wn. App. 800, 804, 208 P.3d 1287 (2009). "A trial court's disposition of child visitation will not be disturbed on appeal unless the court abused its discretion." *Id.* Abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds. *Id.* A decision is manifestly unreasonable where it is based on factual findings unsupported by the record, applies the

11

wrong legal standard or the facts do not meet the requirements of the correct standard. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

"Parents have a fundamental liberty interest in the custody and care of their children" subject to statutory limitations that balance the parent's rights with the child's needs and right to a safe and healthy environment. *In re Dependency of K.D.S.*, 176 Wn.2d 644, 652-53, 294 P.3d 695 (2013) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); In *re Dependency of K.N.J.*, 171 Wn.2d 568, 574, 257 P.3d 522 (2011); *In re Welfare of A.B.*, 168 Wn.2d 908, 919, 232 P.3d 1104 (2010)). Washington law establishes intervention processes to ensure children's safety while simultaneously encouraging families' reunification.

Dependency proceedings occur pursuant to chapter 13.34 RCW. Once a child is found to be dependent and is removed from the parent's home, an out-of-home placement order may be entered where there is no parent available, or a manifest danger exists that the child will suffer serious abuse or neglect. RCW 13.34.130(6). Upon removal, the court establishes a permanency plan for the child which includes reasonable efforts to return the child to the parent's home. RCW 13.34.136(1). The permanency plan continues until the dependency is dismissed. RCW 13.34.136(1). "Any order made by the court in the case of a dependent child may be changed, modified, or set aside, only

upon a showing of a change in circumstance or as" part of a disposition hearing.

RCW 13.34.150.

Visitation is crucial to the reunification plan. *Tyler L.*, 150 Wn. App. at 804. In

formulating the permanency plan, parental visitation is identified as a family right.

RCW 13.34.136(2)(b)(ii)(A). "Visitation may be limited or denied only if the court

determines that such limitation or denial is necessary to protect the child's health, safety

or welfare." RCW 13.34.136(2)(b)(ii)(C). The harm must be "an actual risk, not

speculation based on reports." *In re Dependency of T.L.G.*, 139 Wn. App. 1, 17, 156 P.3d

222 (2017). The burden is on the Department to prove that the visitation poses a

"*concrete risk*" to the child. *Tyler L.*, 150 Wn. App. at 804 (emphasis added).

In this case, the Father contends that circumstances have changed since the

permanency plan was established. The Father no longer lives with the Mother or her

parents. The State has indicated it does not have enough evidence to proceed with the

criminal investigation. And the Father has complied with all of the services identified in

the order of dependency. The Father also argues that any restriction on his visitation is

based on speculation that he is the source of the child pornography found in the home.

The superior court found:

> [T]here are ongoing safety concerns regarding one of the original reasons
> for the dependency: the pending criminal investigation for child

> pornography. It is suspended but not closed. Moreover, there was
> credible evidence of law enforcement exchanging child porn with an IP
> address associated with [the Father], a thumb-drive with child porn was
> found in his home and his [middle child] had pornography on his school
> computer. The commissioner did not err in denying unsupervised
> visitation under RCW 13.34.136(2)(b)(ii)(A) and directing the parties to
> collaborate on a method to meet the child pornography risk.

CP at 739.

The Department responds that the superior court "properly considered the serious safety risk to the children arising from the evidence of [the Father's] *alleged* possession of child pornography." Br. of Resp't at 18 (emphasis added).

While the superior court correctly characterized the evidence and the concerns, the court abused its discretion in finding that the unsupervised visitation with the Father created a concrete risk of harm to the children. The pending criminal investigation in and of itself does not create harm to the children. Instead, the risk is posed by the underlying allegations that the Father possessed child pornography.

For purposes of this dependency, it is undisputed that someone in the home possessed child pornography. Exposure to child pornography harms children, so identifying the person responsible was not critical for purposes of the initial dependency. However, all of the possible suspects are now living separately. Thus, unrestricted visitation with the Father is only harmful if he is the source of the harm. This finding has

14

never been made by any court under any standard of proof. Instead, it remains simply an allegation.

The Department argues that the discovery of the middle child viewing pornography provides another basis for denying the Father's motion for unsupervised visits. One of the websites that the middle child searched was pornhub.com, a website that the eldest child, E.O.-D., mentioned in her forensic interview as a website she knew the Father visited. This information is concerning, but as with the previous paragraph, the Department has failed to provide critical context linking this fact to the Father's conduct to show a "concrete risk" of harm to the children.

Instead, the connection between the middle child's conduct and the Father's conduct is speculative. Did the middle child learn about the website and pornography from the Father purposefully introducing it to him, or did the child learn about it by accident? Did the child learn about it from his older sister telling him what she had found? Did the child learn about it independently from friends at school? Did the child learn about it from the Mother, who admitted to viewing pornography herself? Without this context, the mere fact that the middle child visited a pornography site that the Father visited is insufficient to sustain a finding that limiting the Father's visitation is "necessary

to protect the child's health, safety, or welfare" as required by RCW

13.34.136(2)(b)(ii)(C).

Finally, the Department argues that notwithstanding the lack of findings, the

Father stipulated to the dependencies and his deficiencies. The Father stipulated that the

then active criminal investigation was a basis for finding the children dependent. He did

not stipulate that the allegations were true. And as already discussed, the investigation is

no longer active and is not a basis for restricting the Father's visits with E.O.-D. And

while his stipulation prevents him from challenging the dependency, it does not bar him

from challenging the visitation parameters.

To be clear, there is valid evidence that the Father is the person responsible for

exchanging child pornography with the FBI. The Department's allegation that there is a

risk the Father will expose E.O.-D. to child pornography assumes that the Father is

responsible for bringing the illicit material into the home. But neither the evidence nor

the allegations have been tested in an adversary proceeding or found to be true. If the

Department believes that unrestricted visitation with the Father presents a risk that the

Father will expose E.O.-D. to child pornography, then the Department needs to prove it.

There needs to be a finding under the applicable burden of proof that the Father is either

responsible for bringing child pornography into the home or knew that someone else was doing this and did nothing to protect his children from this risk.

The trial court's finding of risk, based on an allegation of criminal conduct, is insufficient to support the restriction of supervision on the Father's visits with his children. We reverse denial of the Father's motion and remand for proceedings consistent with this opinion.

Reversed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

17