IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIA G. OSORIO MENDOZA, | ) | No. 38968-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NICHOLAS DENCHEL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Nicholas Denchel appeals the superior court's "Order on Motion for Revision." We affirm.

FACTS

Nicholas Denchel and Maria Osorio Mendoza were intimate partners. Ms. Osorio Mendoza filed for a domestic violence protection order (DVPO) against Mr. Denchel on March 2, 2022. Ms. Osorio Mendoza indicated in the petition that she was a victim of domestic violence committed by Mr. Denchel. She requested a temporary and permanent DVPO restraining him from contact with herself and her two children.

In support of the temporary DVPO, Ms. Osorio Mendoza alleged that Mr. Denchel threatened to find her and her children and that he would "shoot himself" if she did not go

with him.  Clerk's Papers (CP) at 4.  Her petition further alleged that she had to change her telephone number because he continuously called her if she failed to answer the phone or respond to his e-mails.  She alleged he would show up at her workplace when she failed to answer or respond to him and would demand that she talk to him.  She described an instance where he appeared at her work during her lunch hour and left unwanted gifts on her car, then attempted to grab her by the arm as she refused to talk to him and attempted to return to work.

Ms. Osorio Mendoza attached to her petition copies of e-mails from Mr. Denchel where he stated: "F[ ] you. . . .  You f[ ] me over.  You call[ ] the cops I will shoot at their cars since they shoot me."  CP at 8.  "I will.die. all because I loved you."  CP at 9.  "I loved you and me killing myself will.make you pay for f[ ] over me . . . .  You let the devil win.  You didnt fight or let the Lord be your guide snd I did.  I want home with my father."  CP at 10.  "You serving God or the devil?"  CP at 14.  "Also I'm never going away."  CP at 15.  "That's how the devil would want u to say good bye.  Every time u come closer to me again, the devil sends Alvin in to pull u away from God and u can't deny I've been asking us for our future to revolve around our relationship with God."  CP at 15.  "I'm bringing you home to Christ and to our home again."  CP at 16.

On March 2, the court issued a temporary DVPO pending a hearing. On March 14, the court reissued the temporary DVPO. The next day, Mr. Denchel's attorney filed a notice of appearance.

The hearing on the petition occurred on March 28, before Commissioner Diana Ruff. When the hearing started, Mr. Denchel, through counsel, moved for a two-week continuance to prepare and send written discovery to Ms. Osorio Mendoza. When asked by the court, Ms. Osorio Mendoza said she opposed the continuance, adding that she had missed two days of work already, and all she wanted was to be able to go to work without being worried about her safety.

The commissioner denied Mr. Denchel's request for a continuance. She noted that Mr. Denchel had been served one month earlier, that his attorney had appeared in the case two weeks earlier, and yet had filed nothing since that time. Also, she determined that Ms. Osorio Mendoza would be prejudiced by a continuance because she had already missed work and she should not be required to miss additional work.

The commissioner asked Ms. Osorio Mendoza if she had anything to say in addition to her petition, and Ms. Osorio Mendoza responded that she did not. The commissioner then gave Mr. Denchel an opportunity to speak. Through counsel, Mr.

Denchel argued that the petition did not set forth facts supporting the statutory definition of domestic violence.

The commissioner disagreed and explained that the petition included messages from Mr. Denchel that showed "a pattern of controlling and abusive messages threatening suicide" and that some messages "threatened homicide." Rep. of Proc. at 9. The commissioner noted that there was no official response from Mr. Denchel in the record. The commissioner entered a permanent DVPO and an order requiring Mr. Denchel to surrender his firearms and dangerous weapons, and prohibiting him from possessing such weapons.

On April 6, Mr. Denchel filed a motion for revision of "the Commissioner's order entered on March 28, 2022 granting Petitioner's request for a [DVPO]." CP at 33. He did not seek revision of the other order of that same date or of the commissioner's oral ruling denying a continuance.

On May 16, the court entered its order, which stated:

> Motion for Revision is hereby: DENIED without oral arguments. Commissioner Ruff correctly found that [Mr. Denchel's] texts of threats to kill and offensive language constated [sic] acts of domestic violence as defined by RCW 26.50.010(3). Furthermore, Commissioner Ruff's decision to not allow a continuance [was] within her discretion. With [Mr. Denchel's] text "I'm bringing you home to Christ and to our home again" and multiple "F" words, a continuance would not have negated [Mr. Denchel's] own words.

No. 38968-5-III
*Osorio Mendoza v. Denchel*

CP at 36.

Mr. Denchel timely appealed.

ANALYSIS

FIRST ARGUMENT: APPLICATION OF IMPROPER STANDARD OF REVIEW

Mr. Denchel contends the superior court erred by applying the wrong standard of review to his motion for revision. We disagree.

All commissioner decisions are subject to revision by the superior court. WASH. CONST., art. IV, § 23. "Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner . . . ." RCW 2.24.050. The superior court reviews commissioner's decisions de novo. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). This right ensures litigants that disputed decisions are made by elected judges.

If the superior court is content with the commissioner's decision, the court may adopt the commissioner's findings, either expressly or by clear implication from the record. *In re Dependency of B.S.S.*, 56 Wn. App. 169, 170, 782 P.2d 1100 (1989).

We disagree that the superior court failed to review the commissioner's decision de novo. Appellate courts review trial court findings for substantial evidence. *See, e.g.*, *In re Determination of Rights to Use of Surface Waters of Yakima River Drainage Basin*,

5

198 Wn.2d 687, 722, 498 P.3d 911 (2021). With respect to the DVPO, there is nothing in the superior court's order that applies a substantial evidence standard. Rather, the superior court, per its prerogative, expressed its agreement with the commissioner's decision.

With respect to the commissioner's denial of the continuance request, the superior court's comments were mere surplusage. Mr. Denchel's motion for revision did not encompass the commissioner's oral denial of his continuance request.

SECOND ARGUMENT: DUE PROCESS VIOLATION BY PREDETERMINING CASE

Mr. Denchel next argues he was deprived of a fair hearing because the superior court judge predetermined his case. He cites the judge's comment, "a continuance would not have negated the Respondent's own words." CP at 36. We disagree that the superior court judge predetermined Mr. Denchel's case.

Mr. Denchel's argument implies a belief that he was entitled to present additional evidence to the superior court. If that is his belief, he is mistaken. *See Ramer*, 151 Wn.2d at 113 (superior court reviews commissioner's decision *based upon evidence and issues presented to commissioner*).

The superior court judge's comment was made *after* the judge considered all of the evidence, in the context of issuing its final order. One can hardly point to a comment made in a final order as evidence that the judge improperly *predetermined* the case.

FINAL ARGUMENT: INSUFFICIENT EVIDENCE

Mr. Denchel argues substantial evidence does not support the trial court's conclusion that he committed domestic violence. He raises two arguments in this respect.

Mr. Denchel first argues he never threatened to kill Ms. Osorio Mendoza. We disagree. The evidence in Ms. Osorio Mendoza's petition paints a picture of a man who refused to stop calling or texting her, who showed up at her work uninvited, threatened to kill himself to pay her back for f[ ] him over, expressed a desire to go home and be with his father, threatened to kill police if she called them, and claimed that the devil controlled her. In this context, the text, "'I'm bringing you home to Christ and to our home again,'" might reasonably convey the threat to kill himself and her. CP at 36.

Mr. Denchel next argues that his profane-laced messages and his text, "'I'm bringing you home to Christ and to our home again,'" constituted constitutionally protected speech. CP at 36. He fails to provide any analysis or citation of authority in his conclusory argument. We decline to address it.

An appellate court may decline to consider a constitutional issue with respect to which it has not been provided with reasoned argument; naked castings into the constitutional sea are insufficient to command judicial consideration and discussion. *Ass'n of Wash. Bus. v. Dep't of Revenue*, 155 Wn.2d 430, 450, 120 P.3d 46 (2005).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____            _____
Fearing, C.J.                                             Pennell, J.