# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANNE JONES, ex rel. C.J.<br><br>Appellant,<br><br>v.<br><br>MAGUIRE DARRAGH,<br><br>Respondent. | No. 86397-5-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

BIRK, J. — Washington law allows a party to petition a court for a sexual assault protection order against a respondent who has subjected that party to nonconsensual sexual conduct or nonconsensual sexual penetration. RCW 7.105.100(1)(b), .225(1)(b). However, in Jones v. A.M., 13 Wn. App. 2d 760, 769, 466 P.3d 1107 (2020), we held that to commit either nonconsensual sexual conduct or nonconsensual penetration, a respondent was required to have capacity to commit a crime under RCW 9A.04.050. Under that statute, a child under the age of 8 years is incapable of committing crime, and a child between the ages of 8 to 12 years is presumed incapable of committing crime unless proved otherwise. Id. We conclude that the Supreme Court's subsequent decision in DeSean v. Sanger, 2 Wn.3d 329, 336, 536 P.3d 191 (2023), abrogated Jones. We hold that it is not a prerequisite to issuance of a sexual assault protection order that the respondent have criminal capacity under RCW 9A.04.050.

I

A.J. petitioned for a sexual assault protection order on behalf of her minor son, C.J., asking the superior court to enter an order restraining M.D., also a minor. A.J. asserted that C.J. had disclosed that M.D. had sexually assaulted him over an approximate period of three years. A.J. later presented evidence which, if accepted by a trier of fact, would tend to support a conclusion that M.D. had engaged in conduct toward C.J. meeting one or more statutory definitions of "nonconsensual sexual conduct" within the meaning of RCW 7.105.100(1)(b), .010(26), and .010(32). A.J. asked that M.D. be restrained from harming C.J., contacting him, entering within 1,000 feet of him, his school, and his residence, and that M.D. be required to participate in sex offender treatment. M.D. denied that he had engaged in the asserted conduct, presented evidence to support his factual contentions, and filed a motion to dismiss the petition.

The asserted conduct occurred over an approximate period of time during which M.D. was 6 to 10 years old. At the time A.J. filed the petition, M.D. was 15 years old. The superior court denied the petition for "[i]nsufficient evidence," based on this court's decision in Jones, in which we held that RCW 9A.04.050 applied to petitions for a sexual assault protection order. 13 Wn. App. 2d at 769. Under our holding in Jones, M.D. could not commit conduct justifying a sexual assault protection order before he turned 8 years old, and the superior court ruled it could not, many years after the fact, assess M.D.'s capacity between ages 8 and 12. Therefore, M.D. lacked capacity to commit an act justifying issuance of a sexual assault protection order. Although, after Jones, DeSean limited the extent to which

the criminal code may be applied to petitions for a sexual assault protection order, 2 Wn.3d at 331, the superior court distinguished DeSean. The superior court reasoned that DeSean limited a respondent's resort to criminal law affirmative defenses, but because a respondent's capacity to commit a legally qualifying act is logically antecedent to an affirmative defense, Jones remained controlling. A.J. appeals.

II

A.J. argues that the civil protection order act (CPOA), chapter 7.105 RCW does not require respondents to have criminal capacity before a superior court can issue a sexual assault protection order against them. We agree.

A

Although we generally review a superior court's decision to grant or deny a protection order for an abuse of discretion, Rodriguez v. Zavala, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017), this case requires us to determine whether a respondent must have criminal capacity as a prerequisite for a court to issue a sexual assault protection order. This presents a question of statutory interpretation, which we review de novo. DeSean, 2 Wn.3d at 334-35.

The goal of statutory interpretation is to give effect to the legislature's intent. Dep't of Ecology v. Campbell & Gwinn, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We begin with the assumption that the legislature means exactly what it says. State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). Where possible, we derive meaning from the plain language of the statute, considering the text of the provision, the context in which it is found, related provisions, and the statutory

3

scheme as a whole. State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent. Id.

B

Under the CPOA, a petitioner may obtain a sexual assault protection order against a respondent who has subjected the petitioner to nonconsensual sexual conduct or nonconsensual sexual penetration. RCW 7.105.100(1)(b), .225(1)(b). "Sexual conduct" includes

>   (a) Any intentional or knowing touching or fondling of the genitals, anus, or breasts, directly or indirectly, including through clothing;
>
>   (b) Any intentional or knowing display of the genitals, anus, or breasts for the purposes of arousal or sexual gratification of the respondent;
>
>   (c) Any intentional or knowing touching or fondling of the genitals, anus, or breasts, directly or indirectly, including through clothing, that the petitioner is forced to perform by another person or the respondent;
>
>   (d) Any forced display of the petitioner's genitals, anus, or breasts for the purposes of arousal or sexual gratification of the respondent or others;
>
>   (e) Any intentional or knowing touching of the clothed or unclothed body of a child under the age of 16, if done for the purpose of sexual gratification or arousal of the respondent or others; or
>
>   (f) Any coerced or forced touching or fondling by a child under the age of 16, directly or indirectly, including through clothing, of the genitals, anus, or breasts of the respondent or others.

RCW 7.105.010(32). Subparts (a), (b), (c), and (e) of this definition require that the conduct be "intentional or knowing." "Sexual penetration" is defined as

> any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person including, but not limited to, cunnilingus, fellatio, or anal penetration.

RCW 7.105.010(33). The court may not dismiss a petition on the grounds that either party is a minor, RCW 7.105.225(2)(a), and "[m]inor" is defined as "a person who is under 18 years of age," RCW 7.105.010(24).

The statute does not require more than that the nonconsensual sexual conduct be "intentional or knowing" to support issuance of an order based on conduct described in RCW 7.105.010(32)(a)-(c) and (e). The statute contemplates issuance of an order based on nonconsensual sexual penetration, without requiring that it was "intentional or knowing." RCW 7.105.010(33); DeSean, 2 Wn.3d at 337-38 (contrasting grounds for issuance of a sexual assault protection order with and without "mens rea" requirements). And the statute explicitly permits entry of an order against persons under 18 years of age. By its terms, the statute does not require a petitioner to further demonstrate the respondent's capacity to obtain a sexual assault protection order.

However, M.D. argues that under Jones, a court must determine that a respondent has criminal capacity before it may issue a sexual assault protection order. Because Jones relied on Nelson v. Duvall, 197 Wn. App. 441, 444, 387 P.3d 1158 (2017), we start there.

5

In Nelson, this court considered the significance of a petitioner's capacity to consent to sexual contact in the context of a petition for a sexual assault protection order. Id. The petitioner asserted she had been incapable of consenting because of intoxication, and the respondent asserted the petitioner had given verbal consent. Id. Under the former sexual assault protection order act (SAPOA), chapter 7.90 RCW, a superior court could issue a sexual assault protection order upon a finding that a petitioner had been a victim of nonconsensual sexual contact or penetration, with "nonconsensual" meaning "a lack of freely given agreement." Former RCW 7.90.010(1), .90 (2006). The statute was silent as to whether a sexual assault protection order could be issued if sexual contact or sexual penetration took place when the petitioner lacked the capacity to consent.

We construed the SAPOA to implicitly require that the petitioner have the capacity to consent or freely agree. Nelson, 197 Wn. App. at 456. In doing so, the court looked to the definition of "freely," the legislative statement of intent, and the sex offenses chapter of the criminal code. Id. at 453-55. We reasoned that "the legislature intended [the] SAPOA to provide a broad civil remedy to protect victims of rape and sexual assault" and, because the SAPOA focused on sexual assault and rape, "its terms should be read in harmony with . . . chapter 9A.44 RCW." Id. at 454. It is a criminal act when a person engages in sexual intercourse with another person when the victim is incapable of consent by reason of being physically helpless or mentally incapacitated, which could occur because of alcohol or drugs. RCW 9A.44.050(1)(b); Nelson, 197 Wn. App. at 455. Because the SAPOA "was intended to provide a civil protection remedy to all rape victims

recognized under criminal law, without exclusion," a superior court must consider evidence that the victim lacked the mental capacity to consent when ruling on a sexual assault protection order petition. Id. at 456. Because it would be "illogical to read [the] SAPOA in a manner that ignore[d] whether a victim ha[d] the capacity to consent," the court interpreted the SAPOA in "harmony" with criminal law to the extent it reasoned that if a sex act is in fact criminal, it must also be one that can support issuance of a sexual assault protection order. Id. at 454, 455-56.

In Jones, the court again interpreted the SAPOA. In that case, an attorney appealed an order granting sanctions against him after he sought a sexual assault protection order against two minor children on behalf of his client. 13 Wn. App. 2d at 762. The attorney contended the superior court based its decision on the erroneous interpretation that the SAPOA was inapplicable to children under eight years old. Id. at 767. This court stated that the SAPOA "must be read in conjunction with the criminal code," citing Nelson. Id. at 769. Because the SAPOA did not define "minor," the court looked to the criminal code for a definition. Id. Citing RCW 9A.04.050, the court recognized that children under 8 are presumed incapable of committing crime, and children between 8 and 12 may have that presumption removed by a capacity hearing. Id. The court adopted the definition of criminal capacity for obtaining a sexual assault protection order, and held that sexual assault protection orders were not applicable to respondents under 8, and available to respondents between 8 and 12 only after a capacity hearing. Id.

Although Jones followed Nelson in looking to criminal law to interpret the SAPOA, using that approach in Jones had a very different consequence. In

Nelson, the court had reasoned that, as a "broad civil remedy" for victims of sexual assault, 197 Wn. App. at 454, the SAPOA logically should be available for at least any conduct that is in fact criminal, see id. at 456. But in Jones, when the court applied the criminal capacity standard to a SAPOA proceeding, the court held, at least to that extent, that the SAPOA also did not reach any conduct beyond conduct that is criminal. See 13 Wn. App. 2d at 769. That interpretive holding is not consistent with the intent of the SAPOA to provide a broad civil remedy—which logically would be expected to reach a broader range of conduct than only conduct that is criminal.

In DeSean, the respondent appealed a sexual assault protection order against him, and argued the superior court erred by refusing to consider an affirmative defense that he reasonably believed the petitioner was not mentally incapacitated and/or physically helpless, a defense that is available for criminal sex offenses in which lack of consent is based solely on the victim's mental incapacity or on the victim's being physically helpless. 2 Wn.3d at 331; RCW 9A.44.030(1). Relying on Nelson's reasoning, the Court of Appeals held that the SAPOA permitted respondents to raise criminal affirmative defenses. See DeSean v. Sanger, 23 Wn. App. 2d 461, 468, 516 P.3d 434 (2022). The Supreme Court reversed, holding that "[t]he SAPOA functions independently from the criminal code," and declined to "graft a criminal defense into a statute intended to provide sexual assault victims with civil remedies."[1] DeSean, 2 Wn.3d at 331.

---

[1] After Jones, the legislature repealed former chapter 7.90 RCW (2019) and enacted chapter 7.105 RCW, which consolidated all civil protection orders into one chapter. FINAL B. REP. ON ENGROSSED SECOND SUBSTITUTE H.B. 1320, at 2, 67th

The Supreme Court observed that the statute omitted affirmative defenses and that the court should not add words or clauses to an unambiguous statute where the legislature had chosen not to. Id. at 331, 335. The court held that Nelson could not be used to import the criminal code's affirmative defenses for two reasons. First, Nelson "effectuated legislative intent to *protect victims* by considering the criminal definition when interpreting whether 'nonconsensual' includes incapacity caused by substances." Id. at 340-41. Incorporating affirmative defenses would not further protect victims, but would instead allow respondents to affirmatively defend against any petition for a sexual assault protection order alleging incapacity due to intoxication. Id. at 341. Second, unlike in Nelson, "consent" was by then explicitly defined following the enactment of the CPOA to require that the petitioner have the capacity to consent. Id. Thus, the court did not need to consult related statutory provisions to determine whether consent required capacity. Id. DeSean thus rejected limiting the availability of a sexual assault protection order based on principles of criminal liability.

C

We conclude that DeSean has abrogated Jones. First, as with affirmative defenses, incorporating respondent capacity hearings into the CPOA would not protect victims, but instead would delay and likely prevent victims from expediently obtaining the intended broad civil remedy. As DeSean explains, a respondent does not receive any criminal penalties when the court issues a sexual assault

---

Leg., Reg. Sess. (2021). However, in DeSean, because the SAPOA was in effect when the petitioner filed her petition, the court interpreted the former statute to resolve the case. 2 Wn.3d at 335.

protection order, so it does not follow that respondents should enjoy all the same defenses they would have in a criminal case. 3 Wn.2d at 339. The legislature expressly found that a victim "should be able to expediently seek a civil remedy requiring that the perpetrator stay away from the victim, *independent of the criminal process*," and that an "efficient and effective civil process" is important to providing the protection victims need. RCW 7.105.900(3)(b), (5) (emphasis added).

A criminal capacity hearing is not consistent with this intent. To overcome the presumption of incapacity in a criminal case, the State must prove by clear and convincing evidence that the child had sufficient capacity to understand the act and to know that it was wrong. State v. Ramer, 151 Wn.2d 106, 114, 86 P.3d 132 (2004). A capacity determination is fact-specific and must be about the specific act charged. Id. There are seven factors to consider in determining capacity: (1) the nature of the crime, (2) the child's age and maturity, (3) whether the child evidenced a desire for secrecy, (4) whether the child told the victim (if any) not to tell, (5) prior conduct similar to that charged, (6) any consequences that attached to that prior conduct, and (7) whether the child had made an acknowledgment that the behavior is wrong and could lead to detention. Id. at 136-37. "Also relevant is testimony from those acquainted with the child and the testimony of experts." State v. J.P.S., 135 Wn.2d 34, 39, 954 P.2d 894 (1998). Such a hearing would require experts, interviewing witnesses, and discovery, all of which would defeat the legislature's intent of providing an efficient civil remedy functioning "independently from criminal proceedings." DeSean, 3 Wn.2d at 336.

Second, the legal underpinnings of Jones have changed. Because the SAPOA "functions independently from criminal proceedings," DeSean held that the respondent's argument "that the SAPOA should be read in conjunction with the criminal code because it mentions 'crimes' is a red herring." 2 Wn.3d at 336-37. Before DeSean, Nelson held that "because [the] SAPOA is focused on sexual assault and rape, its terms should be read in harmony" with the criminal code, and thus looked to the criminal definition of consent. 197 Wn. App. at 454-55. Jones adopted this analysis from Nelson when it concluded that the SAPOA and the criminal code must be read in conjunction with each other, and adopted the criminal capacity hearing requirement. 13 Wn. App. 3d at 769. But, as noted above, both Jones and the Court of Appeals decision in DeSean applied Nelson in a way that, unlike Nelson itself, restricted the availability of a sexual assault protection order to situations in which criminal liability would exist. DeSean has rejected this analysis, and directly stated that the mention of crime in the SAPOA is "clearly used to provide context for the civil remedy." 2 Wn.3d at 337.

Though RCW 9A.04.050 establishes that children under 12 are presumed incapable of committing a crime, the CPOA does not require that a respondent have committed a crime for entry of a sexual assault protection order, but only that they have committed nonconsensual sexual conduct or penetration as defined. DeSean held that a sexual assault protection order petitioner need not meet the standards of criminal cases, because, if the petition is granted, the respondent does not face criminal punishment. 2 Wn.3d at 339. Therefore, conduct that would not support criminal liability can be a basis for obtaining a sexual assault protection

11

order. After <u>DeSean</u>, principles of criminal law remain relevant in determining the minimum range of conduct that a sexual assault protection order reaches, as <u>Nelson</u> held, but they do not bar relief when a petitioner meets the CPOA's requirements for issuance of a sexual assault protection order.

Finally, holding that RCW 9A.04.050 does not apply in sexual assault protection order proceedings is both consistent with existing standards of civil liability and permits the trier of fact to consider the age of the respondent insofar as it informs whether the alleged conduct was intentional or knowing. Washington does not observe an age minimum for a civil intentional tort. <u>Garratt v. Dailey</u>, 46 Wn.2d 197, 202-03, 279 P.2d 1091 (1955). Rather, the age of the alleged tortfeasor is relevant in determining whether the plaintiff has proven the requisite intent. <u>Id.</u> at 203. The respondent's age at the time of the nonconsensual sexual conduct or penetration is relevant to the extent it informs the superior court's evaluation of the respondent's intent or knowledge, but there is not an age minimum that by itself bars a sexual assault protection order against a respondent.

We reverse the superior court's order denying A.J.'s petition for a sexual assault protection order, and remand for a hearing on the merits.

_Birk, J._

WE CONCUR:

_____, ACJ    _____, J.

12